ADDISON COUNTY,

January Term, 1838.

Present, Hon. CHARLES K. WILLIAMS, *Chief Justice.*
    "   STEPHEN ROYCE,      } *Assistant Justices.*
    "   ISAAC F. REDFIELD.  }

Town of Bristol *v.* Town of Rutland.

A person, who goes into a town, other than that in which his family re-
sides, to work, and does actually work upon a contract for labor, is not,
upon becoming sick or disabled, liable to an order of removal, but is to
be regarded as a transient person, within the 11th section of the pau-
per act.

This case was submitted to the county court upon the fol-
lowing case stated.

On the complaint of the overseers of Bristol, an order
of removal was made upon Alvan H. Lilly, on the 11th day
of January, 1837, to the town of Rutland. Said Lilly had
been in Bristol most of the time, for three or four months
previously, at work upon a job of ditching, which he had
taken, till he broke his leg, a few days previous to the order
of removal. He was a poor man, and worked out at
different places, to support himself and family. At the time
of the order of removal aforesaid, his family, consisting of
a wife and three or four children, were living and keeping

house in Richmond in the county of Chittenden. On the second day of February, 1837, on the complaint of the overseers of said Richmond, an order of removal was made upon his wife and children, to the town of Rutland, and they were removed to Rutland, on a warrant, on the 18th day of July, 1837. The said Alvan H. Lilly was removed to Rutland on the 15th day of July, 1837, being unable to be removed sooner, by reason of his sickness, where he remained but a day or two, and returned to his family in Richmond aforesaid, and remained there till his leg was so far restored that he could go to Bristol to work upon his job again.

The defendants contend that the facts in this case bring it within the 11th section of the pauper act, and not within the 3d and 4th sections—and, therefore, that the pauper was not subject to an order of removal from the town of Bristol.

If the court shall be of this opinion, the order of removal is to be quashed, otherwise affirmed.

The county court affirmed the order of removal and the defendants excepted.

*John Pierpoint,* for defendants.

From the facts set forth in this case, the pauper, Lilly, at the time of the order of removal, was not a resident of Bristol,—but his residence was in Richmond. A man's residence is generally where his family and domicil are. *Burlington* v. *Calais,* 1 Vt. 385. *Middletown* v. *Poultney,* 2 do. 37. *Newbury* v. *Topsham,* 7 do. 407.

*H. Needham,* for plaintiff.

This is clearly a case where the pauper could not be treated as a transient person, he having come to reside for a long time in Bristol, as by the terms of his contract, and did actually reside there some three or four months, next before the order of removal, and it is equally as clear, notwithstanding his wife and family did not accompany him, but were residing in Richmond, or some other town, that the order of removal could not affect his family. *Middlebury* v. *Waltham,* 6 Vt. R. 200.

The opinion of the court was delivered by

ROYCE, J.—The act of 1797 recognizes three descrip-

tions of paupers :—those who have their legal settlement in the town where they reside ;—those who are transient persons, and become disabled and confined, by sickness or otherwise ;—and those who have come into a town to reside, but have not gained a settlement therein. The process of removal is applicable only to the class last mentioned ; and in order to determine whether this proceeding is authorized in a given case, it is necessary to ascertain whether the person *has come to reside in the town.* This will necessarily involve a construction of these terms, or a definition of residence, as contemplated by the statute.

It is evident that this expression should be taken in the same sense, whether applied to the liability to removal, or to the gaining of a legal settlement ; since it was in view of such a residence as might have terminated in a legal settlement, that the power of removal was given. The residence required to confer a settlement, under the act of 1801, has been in some measure defined and fixed by decisions of this court. It has been established that a man's residence was the place of his domicil;—if he was a single man, the place where he kept his effects, and to which he was accustomed to resort as his home ; if a married man, the place where he kept and supported his family. Occasional absence, or employment at other places, has been uniformly held not to suspend or interrupt his residence at the place of his usual domicil, so long as this remained visible and notorious.

Where, then, did this pauper reside, when these proceedings were instituted ? He had been laboring in Bristol for several months, but his employment there was of a temporary character, and his family were all the time living in Richmond, where he visited them, and provided means for their support. And, had the act of 1801 remained in force, this state of things, if continued for a year without any warning of the pauper, would clearly have gained him a settlement in Richmond, and not in Bristol. The cases cited, of *Burlington* v. *Calais*, and *Middletown* v. *Poultney*, fully sustain this position. But the language of the two statutes is so manifestly of the same import in this particular, that the construction, given to the latter act on the subject of residence, attaches with equal reason to the former. The consequence is, that, upon principles already settled, Richmond was the place of his residence at the time in question.

It is urged that the facts here stated forbid the supposition that the pauper could have been a transient person in Bristol. That term is not, however, to be understood in a strict and literal sense. It includes all who do not belong to one of the other classes. Hence it has become settled by repeated decisions, that a person confined in jail is a transient person, within the act.

On the whole, as the pauper was not in the town of his legal settlement, and had not, as we think, come to Bristol to reside, it follows that he was there to be regarded as a transient person, within the 11th section of the statute. The plaintiffs should, therefore, have pursued the remedy in that section provided, instead of seeking relief through the process of removal.

Judgment of county court reversed, and the order of removal quashed.

WILLIAMS, C. J., being an inhabitant of Rutland, was interested and did not sit in this case.