ORANGE.
*February,*
1838.

Town of RANDOLPH *v.* Town of BRAINTREE.

It is not fraudulent for the overseers of the poor of the town, where a luna-
tic pauper has real estate, to procure the appointment of a guardian, and
the sale of the lunatic's real estate, with the intent to subject such lu-
natic to removal, if the property is sold for a full consideration, and for
the benefit of such lunatic, and was so sold, as legally to divest the lu-
natic of all title to such estate.

A lunatic female pauper, of full age, may be removed to the place of her
settlement, although such removal may separate her from the family of
her mother.

THIS was an appeal from an order of removal of Lydia
Wakefield, from Randolph to Braintree, as likely to become
chargeable.

Plea—that she was not likely to become chargeable, and
issue to the jury.

On the trial, the plaintiffs gave evidence tending to show
that said Lydia was likely to become chargeable. The defen-
dants gave evidence tending to show she was not likely to be-
come chargeable. They also gave evidence tending to show
that the said Lydia, who was a lunatic, once owned some land,
which she inherited from her father, of about one hundred
dollars value, situate in Randolph, and that, just before this
order of removal, the overseers of Randolph procured a rep-
resentation of lunacy to be made, and a guardian appointed
to said Lydia, and her land to be sold by said guardian, with
the fraudulent intent, on the part of said overseers, to deprive
said Lydia of her said freehold, and thereby to render her
likely to become chargeable to the town, and subject her to
removal. The court decided that said land having been le-
gally conveyed by the guardian, it was immaterial what mo-
tives had induced the overseers to procure the guardianship ;
that the only question for the jury to decide was, whether
said Lydia was likely to become chargeable, and so charged
the jury, who, thereupon, returned a verdict for the plain-
tiffs.

The defendants also pleaded, that the said appellees ought
to be barred from having and maintaining their said order of
removal, because they say, that the said Lydia Wakefield,
who is the daughter of Asahel and Sally Wakefield, lived in
and constituted a part of her father's, the said Asahel's fami-
ly, and was by him supported from her earliest years, up to

the time of the said Asahel's death, which happend heretofore, to wit, on the first day of January, 1830, in said Braintree ; that the said Lydia, after the death of the said Asahel, continued a part of her mother's, the said Sally's family, in said Braintree, up to the 2d day of April, 1830, when the said Sally removed on to a freehold estate in said town of Randolph, of which she was possessed, as tenant in dower of the said Asahel, her husband, of large value, to wit, of the value of four hundred dollars, of which she has ever since been and is now possessed ; that the said Sally, ever since her removal on to said estate, has resided and now resides thereon; that the said Lydia removed with her said mother, as a part of her family, on to said estate, and resided thereon, and as a member of her family, from the time of said removal until she was removed to Braintree aforesaid, under said order, she never having gained a settlement in her own right, nor been emancipated.    All which, &c.

The plaintiffs replied, that the said Lydia, at the time of the decease of her said father, Asahel Wakefield, to wit, on the first day of January, 1830, was more than twenty-one years of age, to wit, of the age of 24 years, and at the time of said Sally's and said Lydia's removal from said Braintree to said Randolph, to wit, on the 2d day of April, 1830, she, the said Lydia, was more than twenty-one years of age, to wit, of the age of 24 years ; and that, although the said Lydia removed to said Randolph, to wit, on the 2d day of April, 1830, in company with her said mother, and continued to reside in the same house with her said mother, from that time to the time of said order of removal, the said Lydia owned a part of said house, in her own right in fee, and owned land adjoining and near to said house, in her own right in fee, and lived in and occupied said house and land, in her own right, and said portion of said house, and said land was put into the grand list of said town of Randolph, and taxed as the sole property of said Lydia ; and said Lydia so continued to occupy said part of said house and land, until said order of removal, and said Lydia so continued to own and possess said portion of said house and land, until the 15th day of November, 1832, when the same was sold and deeded, together with said Lydia's portion of the reversion of said wid-

ow's dower, by Edmund Weston, the lawful guardian of said Lydia, under and by virtue of an order and licence of the probate court for the district of Randolph, to Belcher Salsbury. And so the said appellees say that said Lydia was emancipated. All which, &c.

The defendants rejoined, that the plaintiffs ought to be barred from having and maintaining their said order, because, protesting that the said Edmund was not the lawful guardian of the said Lydia, and that her estate and reversionary interest, in her mother's the widow's dower, was not legally sold, under a legal order of said probate court, as the said appellees have, in their said replication, alleged ;—yet, for rejoinder in this behalf, the said appellants say, that true it is that the said Lydia owned a small part of said house, and a small piece of land adjoining, in fee; all of the value of $150, as heir to the estate of her said father, yet the said appellants say, that the said Lydia never took any charge and management of said estate, she being wholly incapacitated so to do, by reason of mental imbecility, but the same has ever since the removal of said Lydia to Randolph, as aforesaid, been managed and controlled by the said Lydia's mother, and during the same time, the said Lydia has been supported and fed at her said mother's table, which they are ready to verify, wherefore they pray judgment, &c.

The plaintiffs sur-rejoined,

That, although true it is, that the said mother of said Lydia, after her removal to Randolph as aforesaid, did take charge of and manage the real estate of said Lydia, until the same was sold by the said Lydia's guardian as aforesaid, and during the same time the said Lydia was fed at her said mother's table, whenever the said Lydia chose to remain with her said mother ; yet the said appellees say that the said Lydia, ever after her removal to Randolph as aforesaid, was insane and distracted, and did wander about in said town of Randolph, whenever and wherever she the said Lydia pleased, to the annoyance of the inhabitants of said Randolph, and was not under the control of and subject to her said mother; and that a guardian was, by the probate court of the district of Randolph, put over the said Lydia, and therefore the said Lydia was emancipated ; and this the said appellees are ready to verify. Wherefore, &c.

To this sur-rejoinder the defendants demurred and the plaintiffs joined in demurrer.

The county court overruled the demurrer and the defendants excepted.

*L. B. Peck*, for defendants.

I. It will be admitted on all hands that, if the pauper had continued possessed of her freehold estate, up to the time the order of removal was made, she was irremoveable, and the objection might be well taken under the plea, of " not likely to become chargeable." *Londonderry* v. *Acton*, 3 Vt. R. 122. *Brookfield* v. *Hartland*, 6 do. 401. The case, then, turns on the effect that may be given to the sale of the freehold estate. We insist that this sale having been effected by the *fraud* of the appellees, and for the very purpose of making her *removable*, and a charge on Braintree, though it may be good, as between the pauper and her guardian, yet it is *void* as far as the appellants are concerned, and the appellees cannot derive any benefit from their own *fraudulent* acts. The cases are numerous to show that a settlement can neither be acquired nor prevented by the *fraud* of a town or its authorized agents. *Rex* v. *Inh. of Woodland*, 1 T. R. 261. *Rex* v. *Inh. of Mursley*, id. 694. *Rex* v. *Inh. of Birmingham*, 2 T. R. 624, Per Ashurst, J. *Rex* v. *Inh. of Great Sheepy*, 15 Com. L. R. 154. *Rex* v. *Inh. of Ampthill*, 4 Dow. & Ryland, 447. (16 Com. L. R. 209.) *Rex* v. *Inh. of Tillingham*, 1 Barn. & Adol. 180. (20 Com. L. R. 374.) *Rex* v. *Inh. of St. Sepulchre, Cambridge*, 1 Barn. & Adol. 924. (20 Com. L. R. 508.) *Rex* v. *Inh. of Mattersey*, 3 Barn. & Adol. 211. (24 Com. L. R. 49.) *The Inhabitants of Wrentham* v. *the Inhabitants of Attleborough*, 5 Mass. R. 430. *The Inh. of Billerica* v. *Inh. of Chelmsford*, 10 Mass. R. 394. *The Inh. of Conway* v. *Inh. of Deerfield*, 11 Mass. R. 327. *Inh. of Paris* v. *Inh. of Hiram*, 12 Mass. R. 262. *Inh. of Reading* v. *Inh. of Tewksbury*, 1 Pick. 535. *Inh. of Charlemont* v. *Inh. of Conway*, 8 Pick. 408. *Stratford* v. *Fairfield*, 3 Conn. R. 588. To show that one can derive no advantage from a *fraudulent* act, though such act was done under and justified by legal process, we refer the court to the following authorities. *Jackson* v. *Jackson*, 1 Johns.

ORANGE, February, 1838.

Randolph v. Braintree.

R. 424. *Borden* v. *Fitch*, 15 do. 121. *Simms* v. *Slocum*, 3 Cranch, 300. *Bradley's* case, 1 Dane's Abr. 637. *Peirce* v. *Jackson*, 6 Mass. R. 242. *Hall* v. *Hamlin et al.* 2 Watts' R. 354. *Townsend* v. ——, do. 180. *Fermor's* case, 3 Co. 77. *Bright* v. *Eynon*, 1 Burr. 390. *Doe* v. *Carter*, 8 T. R. 300. *Crosby* v. *Leng*, 12 East, 409. *Wells* v. *Gurney*, 8 Barn. & Cress. 769. (15 Com. L. R. 336.) Cro. Eliz. 86. 1 Stark. Ev. 242, 253, and cases there cited. 2 Stark. Ev. 586,-7. *Inh. of Hanover* v. *Turner*, 14 Mass. R. 227.

2. We submit that it was competent for the appellants to set up the *fraud* of the appellees, under the issue joined to the country. This court has decided that, under such a plea, it may be proved that, at the time the order of removal was made, the pauper was seized of a freehold estate. If this be so, then the opposing town may give evidence tending to show, that such estate was sold before the order, and it would seem to be equally clear, that the appellant town may avoid the effect of such sale, by proving it to have been procured by the *fraud* of the town, claiming to derive an advantage from it. Otherwise, the party could escape with the fruits of his iniquity. Fraud may be given in evidence, under the the general issue, both in assumpsit and in debt. (1 Chitt. Pl. 424.) So it was admissible, under the issue joined in this case, on the ground, that, if the sale was procured by *fraud*, the case is to be regarded as though no sale had been made, as far as the present parties are concerned. *Crosby* v. *Leng*, 12 East, 409. *Hitchcock* v. *Fisk*, 1 Caines', Cas. 460. 3 Stark. Ev. 1459. If we are correct in our positions, the court erred in not directing the jury to return a verdict for the defendants, if they found the sale was made by the fraudulent procurement of the appellees.

II. As to the pleadings ;—

The question intended to be raised by the pleadings, is this ;—can a child, who is under age, or of age, and not emancipated, be separated from the parent by an order of removal? We answer, that, under such circumstances, an order cannot be supported. Husband and wife, parents and children, cannot be thus separated. 1 Black. Com. 271 & n. 4. *Rex* v. *Inhabitants of Buckfield*, Burr. Set. cas. 90,

*Ov. of the Poor of Sherburne* v. *Ov. of the Poor of Norwich*, 16 Johns. R. 185. It is apparent from the pleadings that the pauper was never emancipated, unless her arrival at full age operated as an emancipation. That something more is necessary to constitute an emancipation, we refer the court to the following authorities. *Eastwoodhay* v. *Westwoodhay*, 1 Str. 438. *Paulsbury* v. *Woodon*, 2 do. 746. 2 Swift's Dig. 822, 3. Per Hutchinson Ch. J. in *Bradford* v. *Lunenburgh*, 5 Vt. R. 481, 493. 4 Conn. R. 373, and cases there cited.

The pauper could not acquire a settlement in Randolph, in her own right, by residence, as it is admitted by the pleadings that she was a *lunatic*, but she would take the settlement of the mother, acquired after the removal from Braintree. *Rex* v. *Much Cowarne*, 2 B. & Adol. 861. (22 C. L. R. 201.) *Wiscasset* v. *Waldoboro*, 3 Greanleaf, 388. *Upton* v. *Northbridge*, 15 Mass R. 237. *Watson* v. *Cambridge*, do. 286. 2 Swift's Dig. 822. But it may be insisted that the averment in the sur-rejoinder, of the appointment of a guardian over the pauper, worked an emancipation. To this we answer, it is not alleged that the appointment was made prior to the order of removal, and the presumption is that it was made subsequently, as every presumption is to be taken against the pleader. 1 Chit. Pl. 463.

*E. Weston*, for plaintiffs.

1. The charge was correct:—because

1. Under the plea of "*Not likely to become chargeable,*" the Jury should be confined to the simple question of *likely &c.* or *Not likely &c.* and any inquiry how the pauper became so, is improper and irrelevant. *Londonderry* v. *Acton*, 3 Vt. R. 127.

2. The pauper being *lunatic* in fact, it was not only lawful, but the duty of any and every citizen to apprize the probate court of her situation, and equally the duty of that court to appoint a guardian; and the procuring of the representation of lunacy to that court being lawful and a duty, it can, in no sense, be considered fraudulent, let the ultimate object be what it may, or the consequences what they will. *The King* v. *The inhabitants of Great Glenn.* 27 Com. Law R. 70. *King* v. *William Wilson,* 29 C. L. R. 79. *The King* v. *The inhabitants of Birmingham.* 15 Com. Law R. 151.

ORANGE,
February,
1838.

Randolph
v.
Braintree.

*The King* v. *Inh. Oulton*, 27. C. L. R. 249. *Bradford* v. *Lunenburg*, 5 Vt. R. 490. 2 Dane's Abr. 406, 7.

The opinion of the Court was delivered by

WILLIAMS, Ch. J.—An order was made by two magistrate, to remove one Lydia Wakefield from Randolph to Braintree, as likely to become chargeable. An appeal was taken from this order to the county court, and the cause was there tried, on the plea that the pauper was not likely to become chargeable to the town of Randolph. Under the issue, it was competent for the defendant town to give in evidence that the pauper had a freehold estate in the town of Randolph, because a person is irremoveable from his freehold, and also, because it rebuts the presumption that the pauper will be chargeable, so long as he has any visible property, which can be applied to his support. Every person must support himself when able, and apply his property, whether real or personal, for that purpose, before the town can be called on for his support.

It appeared, on trial, that the pauper had owned a tenement of the value of one hundred dollars, and was, therefore, irremoveable, while she owned and resided on it.

It also appeared that she was a lunatic, and had had a guardian appointed, who had sold the land. Nothing appears but that the title had been legally divested from the lunatic, and passed to the purchaser.

The town of Braintree, however, contended, that a short time before the order of removal, the overseers of the poor of the town of Randolph procured the representation of lunacy to be made, the guardian to be appointed, and the land to be sold, with the fraudulent intent, on the part of the said overseers, thereby to deprive her of her freehold, and render her likely to become chargeable, and subject to removal.

As a general proposition, it is true that fraud vitiates every act whatever, although done and attempted to be justified by legal process. It becomes necessary, in this case, to inquire, whether the appointment of the guardian, the sale of the property, &c., with the intent mentioned, are to be considered as fraudulent. They are not to be treated as of that character, because they are so called in the bill of exceptions.

In the first place, it is expressly stated that the pauper was a lunatic. If so, she ought to have a guardian, agreeably to the provisions of the statute. And there would be no fraud

Orange,
February,
1838.

Randolph
v.
Braintree.

in representing the lunacy to the proper tribunal, and procuring the appointment of a guardian, although the persons procuring it may have had in view some ulterior benefit to themselves, or even some sinister designs.

In the second place, it cannot be considered as fraudulent or improper, to cause the lands of such lunatic to be sold, if there are no false representations to procure the order from the competent tribunal, or no collusion in the sale. It is true, it deprives the lunatic of the freehold, and so does every sale of real estate.

In the third place, we cannot consider the intent, with which it is alleged this was done, as fraudulent, or any evidence of fraud. It may be a proper, a lawful, and even a charitable act, to cause such sale, have the avails for the support of the pauper, and thus open the way to compel the town, subject to the charge and maintenance of such person, to afford a more adequate support than would probably be derived from a small tenement of little value, or the feeble support which might be derived from the exertion of relations, themselves poor and incapable of affording much support or relief, if needed.

In the fourth place, to cause such sale to be made, with the intent to subject such person to removal, cannot be fraudulent, as the town, liable by law for the maintenance, should be subject to the charge, and the town where the pauper resides may take any justifiable measures to relieve themselves from a burthen, and to cause a removal to be made to the place of settlement.

In the the case of *The King* v. *Inhabitants of Great Glen*, 5 Barn. & Adol. 108, and in the case of *The King* v. *Inhabitants of Birmingham*, 8 Barn. & Cres. 29, the acts complained of savored much more strongly of fraud than in this case, and yet they were held not to vitiate a settlement acquired thereby. The facts given in evidence in this case, and what was relied upon to show the appointment of a guardian &c. fraudulent, were not evidence tending to show it of that character.

But secondly, the evidence under the issue was immaterial, as it did not tend to show the pauper to be still the owner of the freehold. If the property was legally disposed of, it no longer remained a fund for her support, nor afforded her a residence from which she was irremovable, although the mo-

tives, which induced the representation of lunacy, the appointment of a guardian, and the sale might have been improper. The county court took a correct view of the transaction, in this particular, in saying, that the motives, which influenced the overseers of the poor of Randolph, were immaterial.

The next question arises under the pleadings, which terminated in a demurrer.

Any state of facts, which show that an order of removal should not be made, may be pleaded in bar. Such a plea must be subject to the ordinary rules, applicable to other pleadings. No presumption can be made in favor of the party pleading.

The plea in this case sets forth that the pauper, who is the daughter of Asahel and Sally Wakefield, lived in, and constituted a part of her father's family, from her earliest years to his death in January, 1830; that after his death, she lived with her mother in Braintree to April, 1830; that the mother then removed into the town of Randolph, on an estate which she held as tenant in dower, where she has ever since resided; that the pauper removed with her mother, as a part of her family, and lived with her, and has not acquired any settlement in her own right. It is obvious that this plea presents no facts to prevent a removal. It is wholly immaterial whether she resided with her mother or any other person. No facts are set forth to present the question which has been argued. It is not averred that she was either an infant or an idiot, nor is her settlement in Braintree denied. Why should she not be removed if of full age, incapable of taking care of herself, and likely to become chargeable? Of what consequence is it with whom she resided, or of what family she was a member? This plea must have fallen before a demurrer.

The replication alleged that she was of full age, and, in endeavoring to answer the plea, treats the question of residence as of importance, by alleging that she owned a part of the house where she resided, in her own right. Nothing is yet disclosed as to the pauper being in a state of mental imbecility.

The rejoinder then asserts that she was incapable of managing the estate, by reason of mental imbecility.

Without pursuing the pleadings any farther, the inquiry is

here directly presented, whether a person, such as the pauper is described to be, can be removed from her mother's family, and we apprehend there can be no doubt upon this subject. If an infant, after he ceases to be a mere child, has a settlement, different from his parents, such infant may be removed to his settlement.

If a widow acquire a settlement by marriage, her children, by the former husband, may be removed to their settlement, derived from their father. In the case of *The King* v. *Inhabitants of Great Clacton*, 3 Barn. & Ald. 410, a child of 8 years was removed from her mother and her mother's settlement, to the settlement of the child. The case of *The King* v. *Inh. of Whitehaven*, 5 do. 720, was of a similar character. The facts set forth in the plea in bar, few as they are, and when aided by the replication and rejoinder, do not present any legal impediment to the removal of the pauper, nor offer any reason why she should not be removed.

It is, therefore, of no consequence to inquire as to the after pleadings, whether they are defective in form or in substance, as these pleas are clearly insufficient.

The judgment of the county court must be affirmed.