## TOWN OF SUTTON *v.* TOWN OF CABOT.

Upon an appeal from an order of removal of a pauper, the question, whether the pauper had come to *reside* in the town procuring the order, within the meaning of the statute, may be presented by plea, as well as by motion to quash the proceedings.

There is nothing in the third section of chapter sixteen of the Revised Statutes, in relation to the removal of paupers, which authorizes the removal of a transient pauper.

In this case the pauper was an old lady, who had resided for several years with her son in Cabot. In December, 1844, she went to Sutton to visit her daughter, taking nothing with her but a change of raiment, and intending soon to return. In February, 1845, about the time she intended to return, she had a slight attack of sickness, which prevented her returning at that time. In April, 1845, the day before she was again expecting to return to Cabot, she had a more severe attack of sickness, which rendered it impossible for her to return; and in this state she remained until June 9, 1845, when application was made to the town of Sutton for aid in her support; and they maintained her from that time until her decease, which was in September, 1846. On the 22nd of October, 1845, the town of Sutton procured an order of removal; and previous to that time there had been no change in the determination of the pauper to return to Cabot, except what resulted from the impracticability of such return. In September, 1845, her son, with whom she had resided in Cabot, lost his wife by death, and in November, 1845, he ceased to keep house and removed to Walden, where he boarded with his daughter;—and from this time there was no evidence that the pauper expected she should ever be able to leave Sutton. And it was held, that the pauper had not come to *reside* in Sutton, within the meaning of the statute, at the time the order was made, and that the defendants were entitled to a verdict.

APPEAL from an order of removal of Mehitable Smith, a pauper, from Sutton to Cabot, made by two justices of the peace, pursuant to the statute. The defendants pleaded, first, that, at or before the time of making the order of removal, the pauper had not come to reside, and did not reside, in Sutton; and secondly, that the last legal settlement of the pauper, at the time the order was made, was not in Cabot. The plaintiffs objected to the first plea, as being a matter which could only be taken advantage of by motion to quash; but the court decided, that the matter might be pleaded in bar; and

the case was tried by jury, December Term, 1846,—REDFIELD, J., presiding.

The jury returned a special verdict. The facts in reference to the settlement of the pauper need not be detailed here, as no decision upon that point was made by the supreme court. The facts in reference to her residence were as follows.

For some years previous to December 24, 1844, the pauper had resided with her son John Smith, Jr., in Cabot, who had supported her without compensation. At that time, being nearly eighty years of age, she felt anxious to visit once more her daughter, who resided in Sutton; and she accordingly went there for that purpose, taking with her nothing, except a necessary change of raiment and a blanket to keep her comfortable on the way, and expecting to return to her son's, in Cabot, in a few weeks, after she had completed her visit; and he expected her so to return. About the time she intended to return, February 8, 1845, she had a slight attack of the palsy, which prevented her returning at that time; but she so far recovered from this in the month of April following, that she expected to have returned to Cabot the next day, when she had a more severe attack, which rendered it impossible for her to return; and she remained in this condition until the ninth of June, when application was made to the town of Sutton for aid in her support; and they maintained her from that time until her decease, which was in September, 1846. The last of June or first of July, 1845, three sheets and three pillow cases were brought to her, for her use, from her son's house in Cabot. The order of removal was made October 22, 1845; and there was no change in the determination of the pauper to return to Cabot, before the order of removal, except what resulted from the impracticability of such return. But at that time there was no reasonable probability that she ever could return; nor was there any evidence that she then expected to return;—but if she had recovered she would undoubtedly have returned to Cabot. The wife of her son John died in Cabot in September, 1845; and in November, 1845, he ceased to keep house, and removed from Cabot to Walden and became a lodger in the family of his daughter. From this time there was no evidence that the pauper had any reason to expect, or that she did expect, she should ever be able to leave Sutton, or that she had any hope of ever going to Cabot, or Walden.

From these facts, under the direction of the court, the jury found, that the pauper had not come to reside in the town of Sutton, and was not liable to be removed therefrom; but they found, that her last legal settlement was in Cabot. Exceptions by plaintiffs.

*G. C. Cahoon* for plaintiff.

*T. Bartlett, Jr.,* and *William O. Fuller* for defendants.

The opinion of the court was delivered by

Davis, J. This was an appeal from an order of removal of one Mehitable Smith from Sutton to Cabot, made October 22, 1845. Two pleas were interposed by the defendants in the county court, —one of which was the usual plea to the merits, that the pauper's last place of legal settlement was not in the town of Cabot. This issue was found against the defendants; and, so far as regards the last place of legal settlement, no question is presented for this court to pass upon.

A farther plea, however, was interposed, to the effect, that the pauper had not come to reside in the town of Sutton, within the true intent and meaning of the fourth section of the Revised Statutes, relating to the support and removal of paupers, and so was not subject to the process of compulsory removal adopted in the case. Issue was taken upon this plea, also, and was found in favor of the defendants. The plaintiffs' counsel objected to this plea, as containing matter which could not be insisted upon by way of plea; but that, if available in any way to defeat the order, it could only be presented by a motion to quash the proceedings for that cause.

It is not easy to understand on what principle such a distinction can be sustained. Granting that it could be presented in the mode proposed,—and I am inclined to think, notwithstanding it puts in issue new matter, not apparent of record, that it might have been so presented,—it by no means follows, that it could not also have been done by plea, as in this case. Should it be farther conceded, that the subject matter is of a nature merely dilatory, not affecting the final merits, it is not perceived how that circumstance excludes the right of presenting it by plea. Matters in abatement, or temporary bar, constitute as proper subjects for a plea, as those of a different character.

Sutton *v.* Cabot.

The effect of a verdict against the plaintiffs, however, may be quite different, according to the nature of the questions determined by it. The distinction is of no practical importance in this case, as the pauper has deceased. The verdict determined, that her legal settlement was in Cabot, but, at the same time, that she was only transiently in Sutton, and, though needing relief, was not subject to removal. The plaintiffs were doubtless entitled to reimbursement for their expenditures; but a removal was neither necessary, nor allowable.

The counsel for the plaintiffs have urged, that the present revised code, by the enactment in the third section, making it the duty of the overseers of the poor of the several towns to provide for the comfort and relief of all persons residing in their respective towns, when in distressed circumstances, though having no legal settlement there, *until they can be removed*, has extended the right of removal to transient persons, as well as those who have come to reside, as provided in the fourth section. This is a mistake. The third section of the old code and the fourth section of the new one are substantially alike, and require a similar construction; and nothing in the third section of the new code can have any effect in modifying that construction.

The judgment of the county court is therefore affirmed.