TOWN OF WOODSTOCK v. TOWN OF HARTLAND.

In order that a person may gain a legal settlement in a town by several years' residence, the residence must have been the result of choice, and not of legal coercion.

Where a debtor was committed to jail upon execution and gave a jail bond and was admitted to the liberties of the prison, and then removed his family to the town where the jail was situated, and continued to reside there, within the liberties, with his family, for more than seven years, supporting himself and family, and paying taxes in the town, committing no breach of his bond, it was held, that he acquired no settlement in such town, and that upon his being afterwards committed to close jail and being then aided by the town in which the jail was situated, that town might recover the amount so expended, by an action for money paid, against the town in which he had his legal settlement at the time when he was first committed to jail.

And if it should be conceded, that such prisoner have relatives of sufficient ability, from whom the town, in which the jail was situated, might have recovered the amount of their expenditures for his support, by petition under the statute, yet this will not preclude them from also maintaining an action for money paid, which is also given by statute, against the town in which he has his legal settlement.

INDEBITATUS ASSUMPSIT for money paid, laid out and expended. The parties agreed upon a statement of facts substantially as follows.

The money expended by the plaintiffs was for the board of Adolphus Whitney, while confined for a few weeks in close jail in Woodstock, upon execution, in the fall or winter of 1846. Whitney was born in this state, and had resided sufficiently long in Hartland, previous to 1837, to gain a legal settlement in that town. In the spring of 1837 he was committed to jail in Woodstock, upon execution, and gave a jail bond, and was admitted to the liberties of the prison. In the early part of the year 1838 he hired a house in Woodstock, and removed his family there, and continued to reside there, with his family, within the liberties of the prison, until after the commencement of this suit, and still continued, at the time the facts were agreed upon, to reside there, though not then confined to the liberties of the prison; and during all that time he supported himself and family, without being aided by either Woodstock, or Hartland, or calling upon either of those towns for aid, until his

commitment in 1846, as above mentioned ; and also, during every year subsequent to 1837 he was assessed and paid taxes, in Woodstock, upon his poll and cow.   Whitney had no children, possessed of property of any amount, at the time these expenditures were incurred, except Hiram Whitney of Hartland, who had a small family and was worth about nine hundred dollars.

The county court,—REDFIELD, J., presiding,—rendered judgment for the plaintiffs, *pro forma.*   Exceptions by defendants.

*Washburn & Marsh* for defendants.

The defendants insist, that, upon the facts stated in this case, the legal settlement of Whitney, at the time the relief was afforded to him by the plaintiffs, was in Woodstock.   It is agreed, that he had *"resided"* there for more than eight years previously, and paid taxes during all that time, without calling upon either town for aid.   The case, then, comes directly within the words of the statute.   St. of 1817, § 1, ¶ 8, [Sl. St. 382.]   Rev. St. 100, § 1, ¶ 8.

To exclude the case from the operation of the statute, on account of the *occasion* of the residence of Whitney in Woodstock, would be contrary to well established rules of construction, and also opposed to authority.   St. of 13 and 14 *Car.* 2, c. 12, § 1, [Keb. St. 1225.] *St. Margaret's Westminster* v. *St. Martin's Ludgate,* 2 Bott's Poor Laws 146, *pl.* 186.   2 Cov. & H. Dig. 1261.   [4 Com. Dig. 619. Str. 924.   *Augusta* v. *Turner,* 24 Maine 112.   To sustain the plaintiffs' claim, there should have been attached to the statute of this state, as there is to that of New Hampshire, an *exception* of persons " committed or lawfully restrained in any town."   And even that exception has been held to apply only to such persons, as were *confined in prison.   Bow* v. *Nottingham,* 1 N. H. 260.

The suit should have been commenced against Hiram Whitney, the son of the pauper.   *Bloomfield* v. *French,* 17 Vt. 79.   Rev. St. 104, § 13.

*Tracy & Converse* for plaintiffs.

All persons subject to the poor laws are either such as are *"strangers who have come to reside,"* &c., named in the fourth and sixth sections of chap. 16 of the Revised Statutes, or are " *transient persons,"* named in the twelfth section of the same statute.   Whitney

belonged to the latter class. No person can begin to acquire a settlement in his own right, but such as are *sui juris. Brookfield* v. *Hartland*, 10 Vt. 426. *Tunbridge* v. *Norwich*, 17 Vt. 495. Brayt. 187. 14 Petersd.. 496. 7 T. R. 461. *Wells* v. *Westhaven*, 8 Vt. 322. Is not a person confined in jail just as much under constraint, as a married woman, or a minor ? If Whitney could be considered as a " stranger, that has come to reside," how could Woodstock prevent his gaining a settlement ? Surely in no way, but by an order of removal. *Middlebury* v. *Waltham*, 6 Vt. 200. But he could not be removed, unless the officer, under the warrant of removal, could forcibly take him from the possession of the jailor, or, if he were admitted to the liberties, forcibly thrust him out of the limits, thereby compelling his bondsmen to pay the execution. *Amherst* v. *Hollis*, 9 N. H. 108. If the case comes under the fourth section, there is no way, in which Woodstock could recover for any expenditure, except by an *actual removal*, or by showing the death of the pauper and his sickness at the time of the order. *Londonderry* v. *Windham*, 2 Vt. 149. Ib. 568. *Essex* v. *Milton*, 3 Vt. 17. *Middlebury* v. *Waltham*, 6 Vt. 200. That Whitney's case comes under the twelfth section is abundantly established by authority, as well as by the express provision of the statute ; the being in the liberties is the same as being in close jail ; Rev. St. 103, § 12 ; *Pawlet* v. *Rutland*, Brayt. 175 ; *Manchester* v. *Rupert*, 6 Vt. 291 ; *Danville* v. *Putney*, 6 Vt. 512 ; and if so, he was not subject to an order of removal. *Sutton* v. *Cabot*, 19 Vt. 522.

It is a principle, which seems always to have obtained both in England and in this country, that a person subject to the control of another, or under the restraints of the law, or its process, cannot gain a settlement in his own right ; and a settlement once gained is not lost, except by acquiring another in the state. 4 Mass. 131. 10 Ib. 411. 11 Ib. 441. 8 N. H. 532. *Winchenden* v. *Hatfield*, 4 Mass. 123. *Andover* v. *Canton*, 13 Mass. 547. 2 Botts' Poor Laws 2, §§ 3–13. It is not sufficient to say, that he must have had a residence in some place, and that it was in Woodstock, if any where. His right to gain a settlement during his commitment might be in abeyance, or suspended. 11 Vt. 438. 13 Vt. 445.

The opinion of the court was delivered by

ROYCE, Ch. J. It is not disputed, that the settlement of Whitney was in Hartland, if it were not in Woodstock. He was brought to Woodstock, in the spring of 1837, under arrest upon a writ of execution; and having been committed to jail upon the execution, he was admitted to the liberties of the prison upon executing a jail bond to the sheriff. And the first question to be determined is, whether he acquired a settlement in Woodstock, by residence for the term of seven years, while living within the liberties in obedience to the stipulations of his bond. This question involves the farther inquiry, whether such a person should be regarded as in the condition of a transient person, or in that of a resident stranger. If in the former condition, it necessarily follows, that he can acquire no settlement by residence. And that a person brought from another town, and confined in close jail, is always so regarded, can admit of no question. *Pawlet* v. *Rutland,* Brayt. 175. *Manchester* v. *Rupert*, 6 Vt. 291. *Danville* v. *Putney,* Ib. 512. But an admission to the liberties of the prison is not a release from legal confinement. Until an escape is committed, or the party is discharged, his imprisonment under the process continues. This is manifest, not only from the legal intendment, that the liberties are but an extension of the prison, but from the power which the sheriff and the prisoner's bail are respectively authorised to exercise over him, as well as from his own right, in the character of a prisoner, to seek his discharge from imprisonment in the various ways allowed by law. It is true, that when the right to continue the imprisonment has ceased, a party in close jail can resort to modes of redress, to which one upon the limits may not be entitled. *Comstock* v. *Grout*, 17 Vt. 512. *Gould* v. *Mathewson*, 18 Vt. 65. Whenever a prisoner of either class has become chargeable as a pauper to the town, in which the jail was situated, an action like the present has been considered a proper remedy for obtaining remuneration from the town of the pauper's settlement. This was determined under the eleventh section of the statute of 1797, which related exclusively to transient persons, and which was nearly identical with the twelfth section of the present statute. See cases first above referred to.

The great objection to treating Whitney as a resident stranger, while remaining a prisoner upon the jail limits, arises from the fact,

that he was not at liberty to decide for himself, whether to live in Woodstock, or elsewhere. We can distinguish his case from that of those who are not *sui juris* by reason of personal incapacity, as infants, lunatics and idiots; but we think the control of legal process over the will and actions of a party, who submits to it, should be accounted quite as strong, as that resulting from any of the relations of life between adult persons. And for the effect of these in regard to residence, as contemplated by the statute, it will be sufficient to refer to *Brookfield* v. *Hartland*, 10 Vt. 424, and other cases cited on the argument. It appears, to be sure, that Whitney accommodated himself to his new situation, by hiring a house within the liberties, and living in it with his family for a long period,— even more than seven years. But it cannot be assumed, that he would have pursued such a course, in the absence of that necessity, which was upon him. And hence the course pursued is not to be taken as proof, that he voluntarily selected Woodstock as his place of residence. Moreover, it is not pretended, that he was liable to an order of removal, however strongly his circumstances might have indicated, that he would soon become chargeable to the town of Woodstock. And this is a usual test, by which to distinguish a transient person from a resident stranger. *Danville* v. *Putney*, before cited. *Bristol* v. *Rutland*, 10 Vt. 574. *Sutton* v. *Cabot*, 19 Vt. 522.

In considering the matter thus far we have no difficulty in saying, that the case of Whitney was substantially that of a transient person, and that he had not such a residence in Woodstock, as the statute intended should confer a settlement. But it is claimed, that the English decisions upon the 13 & 14 *Car.* 2, c. 12, under which a settlement was gained by renting and occupying a tenement, should induce a different construction of our statutes. By the statute referred to, a person coming into a parish to inhabit, and renting a tenement of less than ten pounds' annual value, was liable to be removed within the first forty days, if likely to become chargeable to the parish. If the annual value were ten pounds, or over, the statute made no provision for his removal, and it was held, as the implied meaning of the statute, that he became legally settled in the parish at the end of forty days' residence, and occupation of the tenement. Jacob's L. Dict., Title Poor. *The King* v. *Fil-*

*loughby*, 1 T. R. 458. And it was, indeed, established by the case of *St. Margaret's Westminster v. St. Martin's Ludgate*, reported in Botts' Poor Laws 146, and noted in 2 Str. 926, that a settlement could thus be acquired under that statute, though the party renting and occupying the tenement were all the while a prisoner within the rules of a public prison. That case, however, is but partially analogous to the present. The person who became settled in the latter parish could at no time, nor under any circumstances, have been removed, because the house which he rented and occupied was of much more than ten pounds annual value. For the case to be in point, it should appear, that the annual value was less than ten pounds; so that the party, if likely to become chargeable, could have been removed, but for his confinement within the rules of the Fleet. As the renting a tenement of sufficient value would render the party at once irremovable, it has always been treated as the principal and efficient cause of his settlement. This is evident from the manner in which that species of settlement is generally spoken of in the English books. And though a residence of the party for forty days was also necessary, it was made so in connection with the main cause, and as a means of giving it effect. And if a prisoner living within the rules is competent to rent and occupy a tenement, the very occupation would amount to such a residence, as the statute required. But our statutes, in giving a settlement by residence, have had no such reference to property. They have made the residence of the party for seven years, without becoming chargeable, the direct and sole ground of his new settlement. And we are satisfied, that nothing less was intended, than a residence for that period, which should be the result of choice, and not of legal coercion. It follows, that the settlement of Whitney in Hartland has not been changed.

The remaining question is, whether the plaintiffs should have sought a remedy against the son of Whitney, instead of the defendants. That provision in the statute of 1797, which authorized the action to be brought as well against certain relatives of the person relieved, as against the town in which he was settled, was not continued in the late revision. It is only against the town, that the statute now gives the action. In those cases, however, where a relative would be liable at common law, it is said, that a town, or an

individual, furnishing relief under proper circumstances, may still support an action against such relative. *Bloomfield* v. *French*, 17 Vt. 79. But if Whitney's son were liable to be charged with his support, it was a liability created by statute, and could only be enforced by petition to the county court. And though it should be conceded, that this remedy was open to the plaintiffs, yet there appears to be no ground for holding it a bar to an action against the the defendants, which the statute in express terms had already given.　　　　　　　　　Judgment of county court affirmed.