THE TOWN OF NORTHFIELD v. THE TOWN OF VERSHIRE, *appellant.*

*Evidence. Marriage. Pauper. Domicil.*

Evidence of reputation of marriage, and cohabitation, is competent to prove a marriage whenever the question arises in any civil action except for criminal conversation.

Imprisonment in one town, merely upon a bailable criminal accusation, does not so interrupt the legal residence of a man having a home and family in another town, to which he intends to return when he regains his liberty, as to prevent the period of his confinement from being counted as part of the requisite time to gain a legal settlement.

*Quere,* how is it in such respect, with a confinement under sentence of court for a crime?

A. went to reside in P. in the spring of 1816, and in that summer married and resided there as a housekeeper until January, 1817, when, his intention to reside there still continuing, he was arrested on a charge of theft, and, for want of bail, was confined in jail in C. until June, 1817, when he was tried and convicted, and sent to state prison for seven years. His wife remained in P. for more than a year after his arrest. At that time a legal settlement in a town was gained by one year's residence therein. *Held,* that A.'s confinement in jail in C. did not prevent his gaining a settlement in P. at the expiration of one year from the commencement of his residence there.

APPEAL from an order of removal of one George N. Annis, a pauper, from the town of Northfield to the town of Vershire. Plea, that the pauper was unduly removed, because his last legal settlement was not in Vershire. The cause was tried by the court at the September Term, 1859,—BARRETT, J., presiding.

The county court found that the settlement of the pauper's great-grand-father, Jesse Annis, was in Vershire, that the pauper's grandfather William Annis never acquired any settlement in this state in his own right unless he acquired one in the town of Peacham by reason of the facts detailed below, and that neither the pauper's father nor the pauper had any settlement in this state other than such as they derived from the latter's grandfather, William Annis, or his great-grand-father, Jesse Annis.

In the spring of 1816, William Annis, being more than twenty-one years old, went to Peacham, and there took up his abode. He there courted one Nancy Woodward, whose father was a resident of Peacham, to whom it was understood he was married

Northfield *v.* Vershire.

in about three months after going to that place to reside. After this supposed marriage he and this Nancy Woodward lived together as husband and wife, keeping house by themselves, in Peacham, until January 1817, when Annis was arrested on a charge of horse stealing, said to have been perpetrated in Orange county, and in default of bail, was taken to jail in Chelsea, where he remained until the June term of the Orange county court, in the year 1817, when he was indicted, tried and convicted, and sentenced to the state prison for seven years, and was accordingly committed to prison and served there until 1823, when he went back to Peacham and stayed only a few days, but it did not appear at what place in Peacham he then stayed.

After William Annis was arrested and taken to jail in 1817, his supposed wife, Nancy, returned to her father's house in Peacham and there remained until her death in the summer of 1818. In July 1817 she had a child by William Annis.

The court found that Annis was designing up to the time of his arrest, to continue his residence in Peacham indefinitely, and that he would have remained there for more than a year had he not been arrested. There was no other evidence of the marriage of William Annis and Nancy Woodward, except the fact of the usual courtship between them, the understanding of her family that they were married in the summer of 1816, their cohabitation as husband and wife, and the birth of their child, and upon this evidence the court found the fact of their marriage in the summer of 1816.

The pauper's father was born of a second wife of William Annis, whom he married after leaving the state prison.

Upon these facts the county court adjudged *pro forma* that the pauper was unduly removed,* and that the defendant recover his costs, to which the plaintiff excepted.

*Peck & Colby* and *H. Carpenter*, for the plaintiff.

*William Hebard* and *C. W. Clarke*, for the defendant.

---

* Until November 4, 1817, a settlement was gained by one year's residence in any town. See act passed November 6th, 1801.—REPORTER.

Northfield *v.* Vershire.

POLAND, J. The only importance of the fact whether William Annis the grandfather of the pauper was married to Nancy Woodward, is the effect which was produced by his having a lawful wife remaining in Peacham, after he was arrested and committed to the jail in Chelsea, upon the question of his residence, home, or domicil, during that time.

We regard it as now well settled that evidence of reputation and cohabitation is competent to prove a marriage, whenever the question arises in any civil action, except in actions for criminal conversation. The evidence introduced being legally admissible as tending to establish a marriage, and the court below having found the fact of a marriage from it, that fact must be allowed to have its proper effect upon the question of the husband's domicil.

The turning question in the case is, whether the said William Annis acquired a settlement in the town of Peacham by residing in that town one full year, in the years 1816 and 1817. He went into that town to reside in the spring of 1816, married a wife there, became a housekeeper there, and so remained up to January, 1817, when he was arrested on a charge of larceny and, in default of furnishing bail for his appearance at the then next term of the court in Orange county, was committed to jail in Chelsea, where he remained until the June term 1817, when he was tried and convicted of the alleged larceny, and sent to the state prison for the term of seven years. After he was so committed to jail his wife returned to the house of her father in Peacham and there remained until her death in the summer of 1818. It is very clear that Annis, after he was so committed to jail in Chelsea, could not in any fair or legal sense be said to have any residence or domicil in that town, because his stay there was by force of legal constraint and compulsion, and not by reason of any will or choice of his own. In all such cases, even where the imprisonment is upon civil process for the non-payment of a debt (when such imprisonment was allowed) it was always held that the person imprisoned had no residence, but, however long such imprisonment might last, continued to be legally a transient person. This was carried so far in one case that when a debtor confined in jail for debt gave a jail bond, which entitled

him to the limits of the prison, and then hired a house within the limits and removed his family to it, and there lived with them for a continuous period of more than seven years, it was held that thereby he gained no settlement in the town, and that upon becoming chargeable he was properly treated as a transient person. *Woodstock* v. *Hartland*, 21 Vt. 563. Can it be fairly and legally said that Annis' residence continued in the town of Peacham, after he was thus committed to jail, and that his absence was of that temporary character that did not change or put an end to his residence? The year from the commencement of his residence in Peacham would expire at some time previous to the term of the court at which Annis was tried, and while he was detained in jail, merely because he could not, or would not, furnish sureties for his appearance. Whether he had at the end of that year gained a settlement in Peacham depended upon what had already transpired and could not be affected at all by the result of his trial afterwards, or on the consequences of his conviction. So far as his settlement in Peacham was concerned, it was all the same whether he was convicted and sent to the state prison, or whether he was acquitted and set at liberty at the ensuing June term. It is not in terms found in the report of the case from the county court, that during this period Annis intended to return to Peacham as his home, whenever he could regain his liberty. It is found, that he was at the time of his arrest living as a housekeeper with his family in Peacham, intending to continue a permanent residence there, and that but for his arrest he would have continued an actual residence there. When committed to jail he left his home, his family and his effects in Peacham. From this finding as to the previous intent and the circumstances and condition of his family, and the absence of any evidence or circumstance tending to show a change of intent as to residence, we think the only legitimate inference is that during this period, he intended when his term of imprisonment should be ended, by an acquittal or otherwise, to return to his home and family in Peacham. It is said however, that after he was committed to jail, his wife left the home he had provided and returned to her father's, and that therefore his residence and home was then broken up and ended. But this fact does not appear to us to be

entitled to any particular weight in establishing that he did not intend to return to the town of Peacham to reside, and to live with his wife. It does not appear that her return to her father's was intended by her as any abandonment of her husband, nor does it evince any intention on her part not to again live and cohabit with him if he returned. It is very probable that her return was occasioned by necessity. It is not stated but that Annis owned the abode where he lived, but the history of the case makes it probable he did not; but still there is no statement or inference that he had not some right to reside in it, and to return to it, if he could, and chose to do so. If then, while Annis was thus in Chelsea jail, he was there merely as a transient person, and had a house and family in Peacham, to which he intended to return, why did not his residence constructively continue there up to the end of the year? It has been established by numberless decisions, that a man's residence may continue in one town for almost any period of time, while he may in fact be absent for some temporary purpose of business or pleasure, or be detained by sickness or other cause. Upon what principle does this case differ from that class, and why is it different from what it would have been if Annis, instead of being committed to jail, had that same day broken his leg in Chelsea, and been detained thereby in that town, until the expiration of the year? The plaintiff's answer is, that he was confined in jail upon a criminal charge, and therefore, though all the usual elements of a constructive residence continued in Peacham, his legal residence there ceased. It is to be borne in mind, that until after the expiration of the year, it was not made legally certain that he had been guilty of any offence, and no consequences of a conviction, whatever they might be, had then attached. He was not in jail under any sentence or judgment, and he had as much the legal right, and the legal power, to leave his prison and return to his home, as a prisoner in jail for a debt. Pecuniary inability might prevent either from doing so. We are not satisfied that imprisonment upon a criminal accusation merely, in one town has not the effect to make a break in the residence of a man who has at the time a home and a family in another town, to which he intends to return when he regains his liberty. Sup-

pose the law had then required, as now, a continuous residence of seven years to give a settlement, and Annis had been acquitted, or discharged without a trial, and returned to Peacham and remained till seven years expired from his first removal there, is it doubtful whether he would thereby gain a settlement. We think not. Several English cases have been cited as to the effect of an imprisonment in making a break in a settlement. But the English cases can have very little influence here, for their recent settlement act, 9 and 10 Vict. C. 66, sec. 1, expressly provides that " the time during which such person shall be a prisoner in a prison, &c., shall be for all purposes excluded from the computation of time, &c.," which by that act is five years, and it has been held that this language includes all lawful imprisonments in any prison, without distinction, whether for felony, misdemeanor, or debts. *Regina* v. *Hartfield*, 9 Law and Eq., 309.

The case of *Reading* v. *Westport*, 19 Conn. 561, is also relied on by the plaintiff, in which case it was decided that an imprisonment in the state prison for two years under a conviction for bigamy did interrupt a residence in a town where the man had formerly lived, and to which he returned after serving out his sentence. It deserves to be mentioned however, that it does not appear from that case that the pauper had any home or family in such town, or had any intention to return to it during the term of his imprisonment. But the decision is not placed at all on the want of such facts, but wholly on the effect of the absence under the imprisonment.

It does not become necessary in the present case to determine the effect of an imprisonment in the state prison under a conviction for a crime, and a sentence of imprisonment for a term of years. There are manifest grounds to distinguish such a case from the present. In such case it is wholly beyond the power of such person to return to his home if he have such intention, and perhaps it would not be improper to say that he has voluntarily put it out of his power.

Again there may be legal force in the suggestion made in one of the English cases cited, that a conviction for a felony and sentence of transportation, made the convict *civiliter mortuus*, and that thereby he forfeited all his civil rights, and was not regarded

as having a civil existence during the continuance of such sen-tence. We are not prepared to say that such might not here be the legal consequence of a conviction for a felony and imprison-ment in the state prison under sentence therefor.

But in our judgment the imprisonment of Annis, before his trial, did not prevent the continuation of his constructive resi-dence in Peacham where his family and home were, and that he gained a settlement in that town, and thereby lost his settlement in the town of Vershire.

The judgment is therefore affirmed.