## TOWN OF TOPSHAM *v.* TOWN OF WILLIAMSTOWN.

*Pauper. Residence. Insanity.* R. L. s. 2813.

1. Insanity *per se,* occurring after a legal residence has commenced, and which, uninterrupted, would ripen into a legal settlement, does not, under the pauper law, suspend or hold in abeyance such residence, or affect the acquisition of a settlement, except so far as controlled by statute.

2. While under the statute—R. L. s. 2813—the time spent by an insane person in a lunatic asylum is not computed in settlement cases, it is computed when he is not in an asylum, though he is under guardianship.

APPEAL from order of removal of one Sally J. T. Ring, a pauper. Heard on an agreed statement, June Term, 1886, ROWELL, J., presiding. Judgment that the pauper was unduly removed. Affirmed.

It was agreed that said Sally was born and always lived or had her home in Topsham until her marriage in 1869, and ever since, as hereafter appears; that her household goods remained there until the most of them were sold by the overseer of the poor in said town in October, 1884; that the pauper was insane all the time from the appointment of a guardian, in 1872, and was controlled and supported by the guardian in said Topsham from her own means until the overseer took charge of her in June, 1884, since which time she has been supported by the town; that she had no fixed home, but her household furniture was stored in said Topsham; that since her marriage said Sally has not had any home in any other town than said

Topsham, up to the time of making the order of removal; that she never kept house, and only remained in one place so long as the guardian and those who took care of her could agree; that many times she was compelled by force to stay at a particular place, but generally was controlled by persuasion and devices of all kinds; that sometimes she left said town of Topsham, but was returned by the same means. The other facts are sufficiently stated in the opinion.

*R. M. Harvey*, for the plaintiff.

The legal settlement of the pauper is in defendant town, unless she gained one since the death of her husband. *Brookfield* v. *Hartland*, 10 Vt. 424; *Royalton* v. *West Fairlee*, 11 Vt. 438; *Newark* v. *Sutton*, 40 Vt. 261; R. L. s. 2811. It cannot be inferred that the pauper had a home in Topsham, because she had no home in any other town. *Middletown* v. *Poultney*, 2 Vt. 437; *Newbury* v. *Topsham*, 7 Vt. 410; *Bristol* v. *Rutland*, 10 Vt. 574. She never had any legal residence in Topsham after the death of her husband, or, at least, after the appointment of a guardian. It does not appear that she remained there continuously for seven years. She never had any fixed home anywhere; and she was incapable of having or intending to have one at any place. *Woodstock* v. *Hartland*, 21 Vt. 563; *Ryegate* v. *Wardsboro*, 32 Vt. 414; *Ludlow* v. *Landgrove*, 42 Vt. 139; *Brownington* v. *Charleston*, 32 Vt. 411; *Jamaica* v. *Townshend*, 19 Vt. 267; *Hartford* v. *Hartland*, 19 Vt. 397; *Tunbridge* v. *Norwich*, 17 Vt. 493.

Some of the essential elements of a legal residence are capacity for choosing; the fact that a choice was made and continued, with the fact of continual residence or home for seven years. All these facts must concur, but neither exists. If the guardian could will and act for his ward, it must appear that he did so as fully as she would be required to in order to gain a settlement. But the guardian could not thus act for her.

It is said *Holyoke* v. *Haskins*, 5 Pick. 20 : " It is clear that

by our laws a guardian has the same power over his ward that a parent has over his child." Admit this, and then the case is with the plaintiff; for a parent cannot change the legal settlement of his unemancipated child by changing the child's residence. *Woodstock* v. *Hartland*, 21 Vt. 563; *Andover* v. *Canton*, 13 Mass. 547; *Salisbury* v. *Fairfield*, 1 Root. (Conn.) 131; 72 Me. 204; *Daniel* v. *Hill*, 52 Ala. 430.

The pauper retains the residence of her husband, because she had not gained one in her own right. *Bethel* v. *Tunbridge*, 13 Vt. 445.

*Heath & Willard*, for the defendant.

It is the rule of law that the old residence continues until a new one is acquired, so that every one has a residence somewhere. *Abington* v. *Bridgewater*, 23 Pick. 170. It would be a curious doctrine, and one that would introduce serious confusion into our law on the subject of taxation, voting, settlement of estates, and jurisdiction of courts, if a person ceased to reside anywhere as soon as he was afflicted with insanity. *Rockingham* v. *Springfield*, 4 New Eng. Rep. 372; 59 Vt. 521.

In Maine, Massachusetts and Connecticut, under statutes identical with ours, so far as the matter of residence is concerned, it is decided that persons are capable of residing, and do reside within the contemplation of the pauper law, though insane and under guardianship. *Gardner* v. *Farmingdale*, 45 Me. 537; *Auburn* v. *Hebron*, 48 Me. 332; *Corinth* v. *Bradley*, 51 Me. 540; *Chicopee* v. *Whately*, 6 Allen, 508; *Plymouth* v. *Waterbury*, 31 Conn. 515.

The legislature evidently thought that a special statute (Rev. Laws, s. 2813) was necessary to prevent the residence of a pauper removed to a lunatic asylum from continuing in the town from which he was removed. This section determined the decision of the court in *Peacham* v. *Weeks*, 48 Vt. 73. The guardianship does not suspend the residence. R. L. s. 281, cl. 5. If a person is forcibly moved away from

the place where he has been residing, his residence still continues at the old place. *Northfield* v. *Vershire*, 33 Vt. 110.

The opinion of the court was delivered by

Ross, J. By the agreed facts, the pauper, Sally J. T. Ring, before her marriage, had her legal settlement in the town of Topsham. December 25, 1869, she married Moses Ring, whose legal settlement was in the town of Williamstown. During their married life to December 20, 1871, when he died, they resided in the town of Topsham. After his death she remained sane, and had her residence in Topsham, until May 14, 1872, when she was adjudged to be insane and a guardian of her person and property was appointed, by the Probate Court. She remained insane from that time until the making of the order of removal, and without aid from the town of Topsham until June, 1884, and during all that time the only home she had was in the town of Topsham.

On her marriage she took her husband's legal settlement in the town of Williamstown, and that has continued to be her last legal settlement, unless she has acquired one in her own right, since the decease of her husband. Nothing appearing to the contrary, it must be presumed that her residence in her own right from choice and intention, was in Topsham from December 20, 1871 to May 14, 1872. *Middlebury* v. *Waltham*, 6 Vt. 200 ; *Pittsford* v. *Chittenden*, 44 Vt. 382 ; *Stamford* v. *Readsboro*, 46 Vt. 606.

She remained in Topsham, and had there all the residence she had anywhere, for more than seven years from December 20, 1871, without receiving aid from the town, and gained a legal settlement unless her insanity after May 14, 1872, suspended, or held in abeyance, her right to gain a settlement, when once commenced. There is no statute governing such a case, and this is the first time, so far as we are aware, that the precise question has been presented to this court for decision. The only statute, which has a bearing indirectly upon the question, is sec. 2813, R. L., which provides, that in the trial

of settlement cases, the time a person is a patient at a lunatic asylum, except inhabitants of the town in which such asylum is situated, shall not be computed as a part of the time required by law to gain a legal settlement, but shall be deducted therefrom. If the right and power to gain a settlement is suspended or in abeyance, during the time one is insane, there would be no force to the exception in regard to the inhabitants of the town in which the asylum is situated. The entire section leaves upon the mind the same impression which is made by the exception, that insanity, *per se*, does not suspend or hold in abeyance the acquisition of a legal settlement, except so far as controlled by statute. Under the statute, paupers are included in two classes, resident and transient. A resident pauper is one who has a legal settlement in some town in the state, and is residing in a town in which aid is needed, and liable to be removed to the town of legal settlement, or to an order of removal to such town. It is true that a person, having a legal settlement in some town in the State, may be in another town in need of aid under such circumstances as to be a transient pauper therein. To be liable to an order of removal, the pauper must have came to reside in the town in which he is in need of aid, in such a manner that, but for the aid, the residence, if continued for a sufficient time would ripen into a legal settlement in that town.

It has been held in *Londonderry* v. *Windham*, 2 Vt. 149 and in *Randolph* v. *Braintree*, 10 Vt. 436, that insanity does not prevent an order of removal, although such insane person is under guardianship.

These decisions proceed upon the basis that such insane persons, in need of aid, were residents of the town making the order of removal and that their residence was of such a character, as, if uninterrupted, would ripen into a legal settlement. This must be so, since it has been held that only one who is a resident, is subject to an order of removal. A person having a legal settlement in a town in the State, if in need of aid in some other town, where he is not a resident, as in jail, or sud-

denly taken sick when on a journey, is held not to be subject
to an order of removal, but must be treated as a transient pau-
per.   So too must a person who is so idiotic as to be incapable
of " coming to reside" or having any choice in regard to his
place of abode.   *Ryegate* v. *Wardsboro*, 32 Vt. 411 ; *Wood-
stock* v. *Hartland*, 21 Vt. 563.

Hence, if, by insanity or lunacy and the appointment of a
guardian, the power to acquire a legal settlement is suspended
or in abeyance, the paupers should be treated as transient pau-
pers and not subject to an order of removal, as they were held
to be in *Londonderry* v. *Windham, supra* and in *Randolph* v.
*Braintree, supra*.   Therefore, the effect of the decisions in these
two cases, as well as that of sec. 2813, R. L., is, that insanity,
occuring after a legal residence has once been begun—a
residence which if uninterrupted, would ripen into a legal set-
tlement—does not interrupt, suspend or hold in abeyance such
residence.

We think that the legitimate result of these two decisions,
and of sec. 2813, R. L., is to the effect that the pauper, Sally
J. T. Ring, acquired a settlement in her own right, in the
town of Topsham, by her residence therein subsequently to the
death of her husband.   This holding is in accord with the de-
cisions of other courts of last resort.

In *Chicopee* v. *Whately*, 6 Allen 508, it is held that insanity
occurring after a person has become an inhabitant of a town
will not prevent his acquiring a settlement by living therein the
required number of years.   The instructions of the trial judge,
that if the pauper, being capable of choosing a residence, went
to the town with intent to reside there, the domicile, thus ac-
quired would not be changed, or suspended, if he afterwards
became insane, and that such insanity would not prevent his
gaining a settlement, was held to be without error.   The de-
cisions, cited by defendant's counsel of the Supreme Court of
Maine and of Connecticut, are of the same tenor and effect.

The judgment of the County Court is affirmed.