THE TOWN OF STAMFORD v. THE TOWN OF READSBORO.

*Pauper. Domicil.*

W., who had a wife, but did not live with her, had his legal settlement in R. Prior to 1868, he lived about in various places in and out of the state, and some of the time in S. In the spring and part of the summer of 1868, he worked in R., then worked a short time at different places in S., and then hired out to work for V. by the month till the next spring, when he designed to leave the state. He worked for V., who lived in S., five or six weeks, when a difficulty arose between them, and he left, not intending to return, and V. did not expect he would, although neither said anything about it. He then went to another place—but whether in S. or not, was not decided—and hired out to work till spring. He went there on Saturday, stayed over Sunday, and hired out on Monday, to commence work that evening. On that Monday, he helped his new employer drive some cattle to another town, for which he was paid fifty cents. On that evening, and before he commenced work under said contract, he broke his leg, and called on S. for help as a pauper. He always had his washing and mending done where he worked ; but did not intend making those places his permanent residence ; or to remain there longer than his term of service. When he went away from V's as aforesaid, he left his clothes there, but had no trunk, and had, in fact, no home anywhere. *Held,* that W. came to S. to reside, and had not abandoned his residence there, or acquired another, at the time of his injury.

GENERAL ASSUMPSIT. The case was referred, and the referee reported the following facts:

" The plaintiff's claim was for money paid in supporting one Asa Whitney, who broke his leg in Stamford, in the fall of 1868, and being without means of support, applied to the authorities of Stamford, who paid for his board, nursing, and doctor bill, from the time of the injury until he became able to labor in the spring of 1869, the sum of $131.50.

" The said Whitney was born in Readsboro in 1812. His grandfather, John Whitney, with his family, consisting, among others, of his son, Asa Whitney, Sen., then ten years of age, moved into Readsboro about 1790. Asa Whitney, Sen., was the

father of the pauper; John Whitney and his son Asa lived and died in Readsboro. Asa, Sen., owned a farm there for more than thirty years previous to his death, and died in 1839. John Whitney and his son Asa both had a legal settlement in Readsboro. The pauper has never gained a legal settlement in his own right in any town in this state. I find that he has a derivative settlement in Readsboro, and that Readsboro is chargeable with his support, and that Stamford incurred said expense, for which sum I find for Stamford to recover, with interest, amounting to $167 ; unless the court shall be of opinion from the facts following, that Stamford is not entitled to recover. There was no order of removal made, to remove the said Asa Whitney, Jr., to Readsboro. I find that he left his father's house when he was twenty-four years old, and lived several years at Fayette, near Syracuse, New York ——came back to Readsboro after his father's death, and lived there a year, or little more—then went to Catarauagus county, N. Y., stayed one year, then back to Fayette, stayed two years, and was married ; he kept house six months, and his wife died. Then he came back to Vermont, was about Readsboro and Stamford a short time, but had no home in either town—went back to Fayette, stayed two or three years, then lived at Ogdensburg one year, then went to Fayette and stayed till the war broke out, enlisted, went to the war, was gone more than a year, then came back to his brother, Ira Whitney's, who then lived in Stamford, stayed two or three weeks, went back to Syracuse, and enlisted into the cavalry. This was in 1863. He remained in the war till its close, then returned to Fayette and stayed till the fall of 1866. He was married again, but his wife soon after left him. In the fall of 1866, he came to Stamford, and Williamstown, Mass. His oldest brother, Lorenzo, then lived in Stamford, having moved in 1857 from the home farm in Readsboro, where he had always before that time lived, and his brother Ira moved to Williamstown in 1865, where he still resides. He stayed with his said brothers two or three weeks, then went to the state of New York, and was gone till some time in the next winter, when he came to a Mr. Cook's, in Stamford, and worked for him about two months. Then hired out to a man in Williamstown, by the name of Phelps, and worked for him through the season, in the winter of 1867-8. He worked for Mr. Mason, in Readsboro, in the spring and summer of 1868. He worked for Hector Winchell, whose residence is hereafter stated ; then he worked a short time for Mr. Vincent, in Stamford, haying,—then for Hector Winchell, haying,—then about a week for Mr. Wilmarth, in Stamford, cutting brush. He then hired out to Vincent to work by the month till spring, when

he designed going back to the West. He worked for Vincent, who lived in Stamford, five or six weeks, when he and Mr. Vincent had some trouble about drawing wood, and he left Vincent and went to Winchell's, and hired out to him to work till spring, doing chores and driving team. He went there Saturday, stayed with Winchell over Sunday, and hired out to him Monday, and Monday morning went with Winchell to North Adams, to help him drive some cattle. He said he wanted to go to Adams, and would help him drive the cattle for fifty cents, which Winchell paid him. His work for Winchell was to begin that evening, doing chores. They came back from Adams in the afternoon. Whitney was in the habit of getting intoxicated, and when they came back he was, to use the language of the witnesses, ' pretty well set up.' He told Winchell he would go to Vincent's and get some things he had left there, and be back in time to do the chores. He went past Vincent's house, which was on the Wilmarth farm, which Vincent was carrying on, to Wilmarth's inn, and being in liquor, was ordered away. He refused to go, was pushed from the steps and his leg broken. Whitney had not told Vincent that he would not work for him longer, and Vincent had not told Whitney to leave his employ ; but I find that Whitney left Vincent with no expectation of returning to work for him, and also that Vincent did not expect him to return. He had some clothes at Vincent's, but had no trunk, and had, in fact, no home anywhere.

" I further find, that in all the places he worked in Readsboro, Stamford, and Massachusetts, he had his washing and mending done, but did not intend making any of them his permanent residence, or remaining longer than his term of service. The farm upon which Winchell lived, is on the line of the state, all but one or two acres is in Stamford, the rest in Clarksburg, Mass. The house in which he lived, is on the state line, about two thirds of it is in Massachusetts. It is a two story house, with a wing upon either side ; only one wing and a part of the hall are in Vermont. Mr. Winchell, all his family, and Whitney, when there, all ate and slept in that part which stands in Massachusetts. The barn and all the buildings except a part of the house, are in Clarksburg. Winchell always paid his poll tax and voted in Clarksburg. Since the spring of 1869, Whitney has lived in Williamstown, Mass., and supported himself.

"·The defendant offered to prove that one Niles, who has owned the Winchell farm for the last three years, and lived in the same house where Winchell lived, has paid his poll tax, been listed, and voted in Stamford. The referee, intending to decide accord-

ing to law, and have his decision revised by this court, excluded said testimony. I further report, that in what part of the house Winchell lived, where he paid his poll tax, was listed and voted, was provod by parol, under objection by the defendant. If from the above facts the plaintiff is entitled to recover, I find for Stamford to recover $167 and costs. Otherwise, I find for defendant to recover its costs."

The court, at the December term, 1873, SYKES, Assistant J., presiding, rendered judgment on the report for the defendant; to which the plaintiff excepted.

*Preston & Brown* and *C. N. Davenport*, for the plaintiff.

The question is, whether Stamford has properly treated Whitney as a " transient person," within the meaning of § 13, of ch. 20, or whether he should have been treated as having " come to reside " in Stamford, and therefore subject to an order of removal, as provided in § 4 of the same chapter. Our pauper system is an entire system by itself, founded upon and created by the statute. For the purpose of relief, all poor persons belong to one of two classes. 1. Those who have come to reside within a town, and who, if their residence were to continue for seven years, would thereby acquire a settlement. 2. Those who have *not* come to reside—persons who are casually within a town, without the *animus manendi*, and are therefore treated as transient. *Middlebury* v. *Waltham*, 6 Vt. 200 ; *Danville* v. *Putney*, 6 Vt. 512 ; *Bristol* v. *Rutland*, 10 Vt. 574 ; *Charleston* v. *Lunenburgh*, 23 Vt. 525 ; *Pittsford* v. *Chittenden*, 44 Vt. 382.

Upon the facts found and reported, Whitney was, at the time he broke his leg at Wilmarth's, a transient person. He had not at that time (if he ever had, which is quite doubtful,) any home or abiding place in Stamford. He was casually in that town, with no *animus manendi*. " The word *transient* is not to be taken literally, but as contra-distinguished from and including all those who have not *come to reside*." Hence, a person who is imprisoned by force of law, is a transient person. His imprisonment, no matter how long its duration, can never ripen into a settlement. *Danville* v. *Putney, supra*. The principle underlying the cases is well illustrated by *Bristol* v. *Rutland, supra*. " All persons

78

who have not come to reside in any place, are transient." *Charleston* v. *Lunenburgh, supra.*

In order for a man to acquire a settlement in a town, he must have his abiding place, home, or domicil in that town. The domicil of a married man, while he stands in the relation of a member, is with his family; of a single man, the place where he keeps his trunk or effects, and to which he is accustomed to resort when sick or out of employment. *Middletown* v. *Poultney*, 2 Vt. 437; *Newbury* v. *Topsham*, 7 Vt. 407; *Bristol* v. *Rutland, supra.*

It is manifest that two things are necessary to show that a person has come to reside in a town. 1. He must be in the town bodily. 2. He must come *animus manendi;* or, being there, he must have a present subsisting intention of remaining there, and must have abandoned all present intention of seeking an abiding place elsewhere. *Sutton* v. *Cabot*, 19 Vt. 522; *Brownington* v. *Charleston*, 32 Vt. 411; *Barton* v. *Irasburgh*, 33 Vt 159.

The defendant will rely upon *Middlebury* v. *Waltham* and *Pittsford* v. *Chittenden, supra.* Neither of these cases sustain the theory of the defendant; but, on the contrary, the principle upon which they were decided, is identical with our position in this case.

*J. W. Carpenter*, for the defendant.

The defendant insists that the facts reported, not only tend to show, but that they do conclusively show, that Asa Whitney had not only come to reside in Stamford, but that he had in fact resided in that town for six months or more, immediately previous and up to the time he received the injury which caused the expenditure of the money for the recovery of which this suit was brought. and that there is no error in the ruling of the county court. *Londonderry* v. *Windham*, 2 Vt. 149; *Essex* v. *Milton*, 3 Vt. 17; *Middlebury* v. *Waltham*, 6 Vt. 200; *Houghton* v. *Danville*, 10 Vt. 537; *Bristol* v. *Rutland*, Ib. 574; *Charleston* v. *Lunenburgh*, 23 Vt. 525; *Brownington* v. *Charleston*, 32 Vt. 411; *Pittsford* v. *Chittenden*, 44 Vt. 382.

If it had been true in fact that Whitney had changed his residence from Vincent's to Winchell's, it would not have carried his

residence out of the town of Stamford. The most that the plaintiff can reasonably claim is, that his residence would have been on the town line, partly without, and partly within, Stamford; which, we insist, would have been a sufficient residence in Stamford to defeat the right of recovery in this suit. A settlement, or residence, is not lost or gained by changing the domicil from one place to another in the same town. *Princeton* v. *West Boylston*, 15 Mass. 257. But Whitney had not commenced work for Winchell under his contract to work for him through the winter, neither had he done any act toward changing his domicil from Vincent's to Winchell's.

While Winchell had the exclusive occupancy of his whole house, it was wholly immaterial which part he ate and slept in, and evidence of those facts should have been excluded; and the fact as to whether or not he was listed in Clarksburg, was matter of record, and could not be proved by parol. 1 Greenl. Ev. § 501.

If the place of residence of persons living in the Winchell house, is an open question in this case, then the evidence offered by the defendant to prove the residence of Niles, was pertinent to the settlement of that question, and ought not to have been excluded by the referee.

The opinion of the court was delivered by

REDFIELD, J. The report submits the question upon stated facts, whether Asa Whitney had " come to reside " in Stamford, or was at the time a " transient person." He had been in the service of Vincent, in Stamford, for several weeks, under a contract for a longer time of service. He took offence at some matters at Vincent's, and, without notice, went away to Winchell's; drove his cattle for fifty cents; got drunk; on Monday contracted to work for Winchell for a term, to begin that evening; went back to Vincent's, and in a wrangle about the steps of his hotel, broke his leg, and called on Stamford for aid and support. We think he came to Stamford " to reside." *Middlebury* v. *Waltham*, 6 Vt. 200. The case is very like *Pittsford* v. *Chittenden*, 44 Vt. 382. Residence acquired in any town, continues until another has attached. Whitney's clothes, such as he had, remained at

.Vincent's; and his residence at Winchell's, under his contract for service, had not begun. Every person must have a domicil. Whitney had one at Stamford; and although he had *resolved* to abandon it, he had not, in fact, done so, or acquired another. Whether Winchell resided in Stamford or Massachusetts, becomes unimportant.

Judgment affirmed.