Monroe County vs. Jackson County.

Monroe County, Appellant vs. Jackson County, Respondent.

*October 9 — November 8, 1888.*

*Poor-laws: Settlement: Husband and wife: Domicile: Intent: Parent and child: Support " as a pauper."*

1. The rule of the statute (sec. 1500, R. S.), that "a married woman shall always follow and have the settlement of her husband, if he have any within the state," applies where the husband has abandoned his wife or they voluntarily live apart.
2. A man who has his only home and business in a town for more than a year gains thereby a settlement in such town, under subd. 4, sec. 1500, R. S., although he may have contemplated leaving at some future time.
3. A mother supported by her daughter is not supported " as a pauper," within the meaning of subd. 4, sec. 1500, R. S.

APPEAL from the Circuit Court for *Jackson* County.
The case is stated in the opinion.

For the appellant there was a brief by *D. F. Jones* and *Bleekman, Tourtellotte & Bloomingdale,* and oral argument by *D. F. Jones* and *A. E. Bleekman.* They contended, *inter alia,* that Mr. Skutt could not acquire a legal settlement in *Monroe* county unless he made it his home *with the intention to remain.* State *ex rel. Wood Co. v. Dodge Co.* 56

Wis. 79; Jacobs' Law of Domicile, sec. 75, and cases cited in note 2; *Coddington v. Coddington*, 20 N. J. Eq. 263; *Perrine v. Evans*, 35 N. J. Law, 221; *State v. Casper*, 36 id. 367; *Salem v. Lyme*, 29 Conn. 74; *Knox v. Waldoborough*, 3 Me. 455; *Waterborough v. Newfield*, 8 id. 203; *Campbell v. White*, 22 Mich. 178; *Venable v. Paulding*, 19 Minn. 488; *Henrietta Township v. Oxford Township*, 2 Ohio St. 32; *Abington v. North Bridgewater*, 23 Pick. 170, 176; *Warren v. Thomaston*, 43 Me. 406; Jacobs' Law of Domicile, secs. 125–6, 182, 185; *Kellogg v. Winnebago Co.* 42 Wis. 97. A domicile once existing continues until another is acquired; and where a change thereof is alleged, the burden of proof rests upon the party making the allegation. *Desmare v. U. S.* 93 U. S. 605; *Warren v. Thomaston*, 43 Me. 406; *Winn v. Gilmer*, 25 Am. Law Reg. 706, and cases cited in note; *Sanger v. Seymour*, 25 Fed. Rep. 289; *Rockingham v. Springfield*, 59 Vt. 521. Upon the authority of *Saukville v. Grafton*, 68 Wis. 192, it is doubtful whether, under the circumstances of this case, Mr. Skutt could acquire a residence in *Monroe* county. But even if he did, it was not such a settlement as to draw after him the settlement of his wife. To do so it must be an actual, permanent home, and not a roving, shifting existence, dependent on the good-will of acquaintances for shelter — especially where, as in this case, he had in reality abandoned his wife. A married woman may, for many purposes, acquire a residence separate from her husband. Schouler's Dom. Rel. 298, 299; 2 Bishop on Mar. & Div. 125–127; *Kinnier v. Kinnier*, 45 N. Y. 535; *Hood v. Hood*, 11 Allen, 196; *Hopkins v. Hopkins*, 35 N. H. 474; *Dutcher v. Dutcher*, 39 Wis. 651; *Cook v. Cook*, 56 id. 195, 205. And this applies to cases of pauper settlements as well as to other cases. *Middleborough v. Rochester*, 12 Mass. 363; *Washington Co. v. Mahaska Co.* 47 Iowa, 57.

*C. F. Ainsworth*, District Attorney, for the respondent.

TAYLOR, J. This action was brought by the county of *Monroe* against *Jackson* county to recover for money paid by said county of *Monroe* for the support and maintenance of one Chloe Skutt, a poor person, who was injured in said county of *Monroe* in the spring of 1885, and who is admitted to have been a poor person, and needed the supplies furnished by the said county of *Monroe*. There is no dispute as to the value of the things furnished by the said county of *Monroe*, nor as to the fact that they were necessarily furnished to Mrs. Skutt as a poor person. The only question controverted on the trial was the liability of the county of *Jackson* to support such poor person at the time the county of *Monroe* furnished such support to her. Admitting that Mrs. Skutt was a poor person needing support, and admitting that the county of *Monroe* lawfully furnished the supplies to her as stated in the complaint, the claim of the defendant county is, that at the time such supplies were furnished by the county of *Monroe* the said Mrs. Skutt had no legal settlement in said county of *Jackson*, and that said county of *Jackson* was not liable for her support as a poor person.

The following facts seem to have been fully established on the trial: (1) That, in the early part of the year 1880, Mrs. Chloe Skutt was married to one Benjamin Skutt, both being at the time old persons, and possessed of very little property. (2) That at the time of their marriage both had lived several years in said county of *Jackson*, and each had a legal settlement in a town in said county at the time of such marriage. (3) That after the marriage they lived together as husband and wife for about six months in said county, in the town in which the husband had a legal settlement; that in September, 1880, Benjamin Skutt sent his wife to her daughter's, and has never lived with her as his wife since that date, or in any way provided for her support. (4) That shortly after Mrs. Skutt came to live with

her daughter she received support from the town in which she resided in said county of *Jackson*, as a pauper, during the latter part of the year 1880 and the early part of the year 1881. After that the authorities of *Jackson* county were about to send her to the county poor-house, and her daughter Mrs. Oliver took her to her home and supported her until she went to Sparta in June, 1884. (5) After she had lived in Sparta from June, 1884, to April, 1885, she was injured, and was unable to support herself or provide medical attendance, and the county of *Monroe* furnished the medical attendance and other supplies and necessaries, for which this action was brought. (6) Shortly after Benjamin Skutt sent his wife to her daughter, and in the fall of 1880, he left the county of *Jackson*, and lived in the county of *Monroe* until the spring of 1881. In the spring of 1881 he returned to *Jackson* county and lived near where he had formerly lived for about one year; and in the spring of 1882 he returned to the town of Angelo, in *Monroe* county, and resided there continuously from that time until the 4th of July, 1885, when he left said county. Where he has lived since that time does not appear, but it is satisfactorily shown that he has not lived in either *Monroe* or *Jackson* county since that date. (7) There is no proof that Benjamin Skutt had ever been a town or county charge, or ever received any aid from town or county, until the last of the year 1882 or the early part of 1883. At this time he was living in *Monroe* county, and the proper authorities of said county then furnished him and the man with whom he was living a few dollars' worth of necessaries. The officer who furnished this aid says: "I never made any bill to *Jackson* county for that. I never sent in any bill, for this reason: It was a very small amount, a matter of a few dollars, and we always had to come here three or four times to collect a bill, and it did not pay the expenses." (8) There is no evidence that *Monroe* county furnished aid or assistance to

Benjamin Skutt after the early part of 1883, and down to the time he departed from said county in July, 1885; nor does it appear that said Skutt was during any of that time supported by private charity.

Upon these facts the learned circuit judge directed a verdict for the defendant. The county of *Monroe* duly excepted to the ruling of the judge, and appeals from the judgment entered in favor of the defendant county.

It is urged by the counsel for the appellant that the learned circuit judge erred in not holding that Mrs. Chloe Skutt had, at the time she received her support from *Monroe* county, a legal settlement in the county of *Jackson*, and that consequently *Jackson* county was liable for such support. Upon the facts stated, it is evident that both Mrs. Skutt and her husband had a legal settlement in the county of *Jackson* at the time of their marriage in 1880; and that such settlement continued in *Jackson* county until at least one year after Benjamin Skutt returned, in the spring of 1882, to live in said county of *Monroe*. At the time he received some slight support from *Monroe* county in the fall of 1882 and the early part of 1883, he had not gained a settlement in said county of *Monroe*, nor had he lost his settlement in *Jackson* county. It is insisted by the learned counsel for the respondent that Benjamin Skutt, the husband of Chloe Skutt, gained a settlement in *Monroe* county by his residence in said county, without receiving any public or private aid for his support, from the early part of 1883 to July, 1885, when he left such county; and it is also claimed that he lost his settlement in *Jackson* county by a voluntary and uninterrupted absence from such county for more than one year previous to the time the county of *Monroe* furnished the support to his wife in the spring of 1885. It is further insisted by the learned counsel for the respondent that if Benjamin Skutt had no legal settlement in the county of *Monroe* when such aid was furnished to his wife

by the county of *Monroe*, still the county of *Jackson* is not liable for the aid furnished to the wife.

We have spoken of Skutt and his wife having a settlement in one or the other of the counties, instead of in any particular town in such counties, because it appears that the support of the poor in such counties had been assumed by the counties, respectively, so that a settlement in any town of either county would make the poor persons chargeable to the county in which the town of settlement was situated. The statute defines how a person obtains a settlement for the purposes of support as a pauper, and how such settlement may be changed or lost. Sec. 1500, R. S., reads as follows: "Legal settlements may be acquired in any town, so as to oblige such town to relieve and support the persons acquiring the same, in case they are poor and stand in need of relief, as follows: (1) A married woman shall always follow and have the settlement of her husband, if he have any within the state; otherwise her own at the time of marriage, and if she then had any settlement, it shall not be lost or suspended by the marriage; and in case the wife shall be removed to the place of her settlement, and the husband shall want relief, he shall receive it in the place where his wife shall have her settlement. . . . (4) Every person of full age, who shall have resided in any town in this state one whole year, shall thereby gain a settlement in such town; but no residence of a person in any town, while supported therein as a pauper, shall operate to give such person a settlement in such town. (5) Every minor whose parent, and every married woman whose husband, has no settlement in this state, who shall have resided one whole year in any town in this state, shall thereby gain a settlement in such town. . . . (7) Every settlement, when once legally acquired, shall continue until it be lost or defeated by acquiring a new one in this state, or by voluntary and uninterrupted absence from the town in which

such legal settlement shall have been gained, for one whole year or upward; and upon acquiring a new settlement, or upon the happening of such voluntary and uninterrupted absence, all former settlements shall be defeated and lost."

The rights of the respective parties to this action must be determined upon a construction of the law above quoted. Under these provisions of law, and upon the facts established by the evidence, it seems to us very clear that the learned circuit judge properly directed a verdict for the defendant county. The evidence establishes, beyond controversy, (1) that, at the time of the marriage of Benjamin Skutt and Chloe Skutt, they were both residents of and had legal settlements in *Jackson* county, and that up to that date neither of them had been supported at the expense of the public or by private charity; (2) that after the marriage Benjamin Skutt, the husband, removed to a town in the county of *Monroe,* and resided in such town for more than one year previous to the time *Monroe* county furnished the aid to his wife, which is the ground of action in this case, and that during such one year and more, immediately preceding the time such support was furnished the wife, he was not supported as a pauper in said town and county of *Monroe;* (3) that at the time such support was furnished Benjamin Skutt had been voluntarily and uninterruptedly absent from the town in *Jackson* county in which he had theretofore a legal settlement, and from *Jackson* county, for more than one year. Under the statute above quoted, it seems very clear that if Benjamin Skutt had obtained a legal settlement in the town of Angelo, in *Monroe* county, where the aid was furnished to his wife, then his place of settlement was the place of settlement of his wife, and *Jackson* county was not liable for the aid furnished. It is claimed by the learned counsel for the appellant that the statutory rule should not be applied when it appears that the husband and wife voluntarily live apart, or when the

husband abandons his wife.    The statute, however, makes
no exception to the rule laid down, viz., that the wife "shall
always follow and have the settlement of the husband."
Though the wife may be abandoned, or she lives voluntarily
apart from her husband, she is still his wife.    The statute
not having made any exception to the general rule stated,
we are not at liberty to make one.    If the present rule is
unjust, it is for the legislature, and not for the courts, to
correct such injustice.

It is urged that the proofs do not clearly establish the
fact that Benjamin Skutt acquired a legal settlement in the
town of Angelo, in Monroe county.    We think the learned
circuit judge was right in holding the evidence conclusive
on that question.    The evidence shows that he lived in such
town for more than one year, the length of time required
to obtain such settlement, and that for more than two years
immediately preceding the time when the aid was furnished
his wife he had lived in such town without receiving any
aid as a pauper or poor person.    That he may have con-
templated leaving such town at some future time does not
defeat his gaining a settlement in such town.    He had his
only home and business in such town for more than the
time required by the statute, and that is sufficient.    See
*Abington v. North Bridgewater*, 23 Pick. 170, 176, 177;
*Anderson v. Estate of Anderson*, 42 Vt. 350, 353; *Middle-
bury v. Waltham*, 6 Vt. 199, 202; *Stamford v. Readsboro*, 46
Vt. 606, 611; *Pittsford v. Chittenden*, 44 Vt. 382.    We are
not, therefore, called upon in this case to decide what would
have been the rights of the respective counties had Benja-
min Skutt lost his settlement in *Jackson* county without
having gained a settlement in some other town in another
county, by a residence therein for more than one whole
year, nor whether the wife in such case would or would not
also lose her residence in the county where her husband
had theretofore a legal settlement.

The only other fact in the case which is necessary to consider is the fact that after Mrs. Skutt left her husband and lived separate from him, and before he had obtained a settlement in the town of Angelo in *Monroe* county, she was supported by the town of Alma, in *Jackson* county, from the fall of the year 1880 until the spring of 1881. The evidence shows that she received no public aid after the spring of 1881. From that time until she was injured in *Monroe* county she received no aid from the public, but either supported herself or was supported by her daughter. We do not think that the support of a mother by her daughter should be deemed in the law a merely charitable support, within the rule stated in the case of *Saukville v. Grafton*, 68 Wis. 192, 195. When support is furnished by a child to a parent, it is presumed to be furnished as a legal and moral duty which the child owes to the parent, rather than as a charity. See sec. 1503, R. S. The support of the mother by the daughter is not supporting a poor person as a pauper within the meaning of subd. 4, sec. 1500, R. S., above quoted. It becomes unnecessary, therefore, to determine in this case whether a husband can gain a new settlement in another town while his wife is supported as a pauper in the place of his former settlement, or whether such support of the wife must be deemed a support of the husband within the meaning of subd. 4 of said sec. 1500, R. S., so as to prevent him from acquiring a new settlement while such support continues.

*By the Court.*— The judgment of the circuit court is affirmed.