### Town of Hartford v. Town of Hartland.

A settlement by seven years residence, under the statute, can only be acquired by persons above the age of legal majority. No allowance can be made for any length of residence during infancy, though it may have been after emancipation.

A removal from town, with the person's family and effects, and a residence for several months in another town, will interrupt the gaining a settlement by seven years residence, notwithstanding the person may, at the time of removal, contemplate a return at some future, but indefinite, time.

Whether a person was legally chargeable to a town, so as to entitle them to institute proceedings for his removal as a pauper, must depend upon the degree of his destitution and poverty at the time the proceedings were taken.

In this case the paupers removed were a widow, who was sickly and subject to fits, and her children, who were of tender age; and it appeared, that, previous to their removal, relief had been afforded to them by the town instituting the proceedings; and, it appearing that the widow had no property, nor interest in any property, except such as was subject to attachment, or was placed beyond her immediate control by reason of other liens, and except certain household furniture, which it did not appear was any more than sufficient to enable her to live comfortably with her children, it was held, that she must be considered as chargeable, and, as such, subject to removal.

Hartford *v.* Hartland.

APPEAL from an order of removal of Sophronia Adaline Patch and her children from Hartford to Hartland, made, March 12, 1844, by two justices of the peace, under the statute. Pleas, that the paupers had not their legal settlement in Hartland, and that they were not legally chargeable to Hartford at the time of removal, and trial by jury, November Term, 1844,—HEBARD, J., presiding.

On trial it appeared that William Patch, the husband of the said Sophronia, had a derivative settlement in Hartland at the time of his death, which was August 1, 1843, unless he had acquired a settlement in Hartford by seven years' residence ; in reference to which the facts appeared as follows. In November, 1826, when he was eighteen years of age, his mother, who was a widow, informed him that he must take care of himself, and that she would not call upon him for any of his earnings, nor interfere with him in any way ; and thereupon he contracted to live with one Wright, in Hartford, and did live with him, until he was twenty one years of age. In the spring of 1830, soon after he became of age, he went to Whitehall to work during the season, leaving part of his clothes and effects at Hartford ; and after an absence of five or six months he returned to Hartford, as he had intended, and was then married to the said Sophronia. He continued to reside in Hartford until February, or March, 1834, when he removed with his family to Lebanon, New Hampshire, for the purpose of working with his brother at making shoes and perfecting himself in the trade, leaving some of his household effects and his cow in Hartford. He soon after formed a partnership with his brother, and worked with him until April, when the partnership was dissolved, and he subsequently carried on the business alone. After the formation of the partnership he removed all his effects and his cow to Lebanon. He hired a house, and planted a garden, and planted a piece of potatoes upon shares, and continued in this way until June, 1834, when he sold his interest in his garden and potatoes and removed to Hartford; where he continued to reside until March, 1841 ; when he again removed to Lebanon and resided there until his death.

The testimony farther tended to show, that the father of the said Sophronia died in 1829, leaving three heirs, and that one Combs was appointed administrator upon his estate, and that there was found in his hands, upon the settlement of his administration ac-

count in October, 1830, a balance of $68,27, belonging to the heirs; that Combs was then appointed guardian of the minor children, of whom the said Sophronia was one; and that he had never made any settlement in the probate court, as guardian; but Combs testified, that he had no funds in his hands, as guardian, and that he had had none for some years. In the settlement of the estate of the father of said Sophronia, the reversion of the widow's dower remained unsold; and the said Sophronia's share of this was worth, at the time the order of removal was made, from $30 to $40;—but the plaintiffs offered to prove, that this property had been attached, in an action against said Sophronia, and that judgment was recovered in the suit against her a few days before the order of removal was made; to this evidence the defendants objected; but it was admitted by the court. It did not appear, that execution had been taken out upon that judgment. Soon after the death of her husband the said Sophronia returned to Hartford, being then possessed of a cow, three beds and bedding for the same, and some other articles of household furniture, of the value, in all, of about $80; but the plaintiffs gave evidence tending to prove, that her mother claimed to own some part of the furniture, and that her brother had kept the cow for more than a year before the order of removal was made, for which he had not been paid, and for which he claimed a lien upon the cow. It appeared that William Patch left some wearing apparel at his decease, which became the property of the said Sophronia; but there was no testimony tending to show whether, or not, she had any of this in her possession at the time the order of removal was made. It also appeared, that the said William erected a small house in 1839, by permission of his mother in-law, upon the land which she held as her dower, which was worth, as the testimony tended to prove, from $25,00 to $40,00 to remove from the land; that he subsequently leased the house to one Bailey, at a rent of $12,00 per year; that at his decease the rent for one year remained due from Bailey; and that no administration had been taken out upon his estate;—and there was no evidence tending to prove that this property had been sold, or disposed of.

The testimony on the part of the plaintiffs tended also to prove, that the said Sophronia, at the time the order of removal was made and for a considerable time previous, was in feeble health and sub-

ject to fits; and that the town of Hartford had paid about five dollars for relief afforded her immediately before the making of the order.

The defendants requested the court to instruct the jury;—1, That if they believed there was the agreement between the said William and his mother, before he went to reside in Hartford, which the testimony tended to show, he was emancipated; and that, if he continued to reside and have his home for seven years continuously from that time in Hartford, he thereby gained a legal settlement in Hartford; 2, That the said William's absence at Whitehall, in the season of 1830, under the circumstances proved, did not interrupt the continuity of his residence in Hartford; 3, That if they believed that the said William removed his family to Lebanon in 1834 for a temporary purpose, with the intention of returning again to Hartford, and that he did return, after an absence of about three months, as the testimony tended to prove, such removal was no interruption of his residence in Hartford, to prevent his gaining a settlement there; 4, That if they believed there was property, of the kind and value such as the evidence tended to show, belonging to the estate of the said William and to the said Sophronia in her own right, the said Sophronia was not legally chargeable to the town of Hartford, so as to authorize her removal.

But the court instructed the jury, as to the defendants' first request, that; in order to gain a settlement by seven years' continuous residence, the residence must commence after the person was twenty one years of age.   As to the second request the court charged as requested.   As to the third request the court charged the jury, that, if the said William Patch went to Lebanon in the spring of 1834 for the purpose of making that his residence, and took his family and effects, leaving no household establishment in Hartford, and entered upon and prosecuted the business of his trade, or calling, for his own benefit, and so continued for three or four months, this would be an interruption of his residence in Hartford, although at the time of his going there he might have left a part of his effects behind, and although his object in going there was in fact to perfect himself in the shoemaking trade, as some of the testimony tended to show, and although, at the time of his removing to Lebanon, he might have intended at some future time to remove back to Hartford. As to the fourth request, the court charged the jury, that the prop-

erty, of which William Patch died possessed, was not the property of the said Sophronia, for her to dispose of, without administration first having been taken upon the estate of the said William; that, if she was destitute and in need of assistance, the town of Hartford might furnish her support, notwithstanding there was the small house and some household furniture and a cow; that the furniture, if held in her own right, would not prevent her from becoming chargeable, if she had no more than was necessary for her family, to enable them to live comfortably; that the cow could neither be disposed of by her, nor by the town, for her support, if the testimony was believed as to the lien upon the cow for the keeping; that the reversionary interest in the dower of her mother, if worth no more than from $30,00 to $40,00, as the testimony tended to show, would not prevent the said Sophronia and her children from becoming chargeable to Hartford, as a lien had been created upon that interest by the attachment and judgment against her; that this lien, at the time the order of removal was made, would not be affected by the fact, that no execution had at that time issued upon the judgment; and that, if the testimony of Combs was believed, the balance found due in his hands, at the settlement of his administration account, would not prevent her from becoming chargeable to Hartford.

Verdict for plaintiffs. Exceptions by defendants.

*Tracy & Converse* for defendants.

*O. P. Chandler* and *J. Barrett* for plaintiffs.

The opinion of the court was delivered by

Royce, Ch., J. It is not necessary to state all the facts relating to the question of settlement. The settlement was indisputably in Hartland, unless William Patch, the late husband of the said Sophronia, and the father of her children, acquired a settlement in Hartford, under the eighth clause of section one of the statute of November 26, 1817, (which is re-enacted, and forms the eighth clause of section one of chap. 15 of the Revised Statutes,) by a residence there, supporting himself and family for the term of seven years.

Objections are taken to the sufficiency of the evidence given to make out such a residence, whether it is calculated from November,

Hartford *v.* Hartland.

1826, when he commenced living in Hartford, or from October, 1829, when he arrived at the age of twenty one years. As to the period commencing November, 1826, it is objected, that he was at Whitehall five or six months in the season of 1830; and that at the beginning of this residence he was but eighteen years old. It is answered, that the absence at Whitehall was for a temporary purpose, that he left a portion of his effects at Hartford, intending to return there, (as he did,) when the purpose of such absence was accomplished; and as to his infancy from 1826 to 1829, it is answered, that he had pre-previously become emancipated.

There is no occasion to determine whether the absence at Whitehall was such as would legally interrupt or sever the period of residence in Hartford; nor whether the facts disclosed in the case were sufficient to constitute a legal emancipation:—because infancy alone, during the first three years, was a bar to any accruing settlement by residence during that time. The settlement by seven years' residence is expressly confined to persons " of full age;" and these words can only have reference to the age of legal majority.

If the period is calculated from his coming of full age, it is objected, that the continuity of his residence in Hartford was broken by his removal to New-Hampshire in 1834, and his residence there for three or four months. And as it appears that he removed with his *family*, and set up business there, leased a house, garden, &c., and, while there, withdrew all his property and effects from Hartford, though he may have contemplated a return to Hartford at some future, but uncertain time, there was a clear interruption of his residence in that town. The case is identical, in principle, with that of *Royalton v. Bethel*, 10 Vt. 22. It follows, that the paupers had their legal settlement in Hartland, when the order of removal was made.

Whether this widow and her children were legally chargeable to Hartford must depend upon the degree of her destitution and poverty, when the proceedings were taken. It seems she was herself sickly and subject to fits, and that her children were of tender age. Little reliance for support could therefore be placed upon the personal efforts or labor of the family.

It is claimed, however, that she had property and means sufficient to have sustained herself and children, at least, for a time. She be-

came the owner of her husband's wearing apparel upon his death in 1843; but whether any part of it remained undisposed of, when these proceedings were taken, does not appear.  We are agreed, that this is entitled to no consideration.  She also owned, as heir of her deceased father, an undivided share, worth from $30 to $40, in the reversion of her mother's dower; but this had been attached, and was then holden to satisfy a judgment against her of something over $30.  She also possessed three beds, and bedding for the same; but it appears, that one was claimed by her mother; and the jury have found, that she had no more furniture, of any kind, than was necessary to enable her, with her children, to live comfortably.  And so long as it was neccessary, or expedient, that they should continue together as a family, it could answer no valuable purpose to either town, to require this furniture to be disposed of, since a like amount would have to be substituted.  It would seem, that nothing should be reckoned on account of the sum found due, in 1830, from one Combs, the administrator of her father's estate, (and of which her share was about $20,) because that sum was then legally transferred to the custody of said Combs, as guardian of the children, and the evidence tended to show it all expended many years before the trial.  She had no legal claim to the cow, or the rent due to her husband from one Bailey, (of about $12,) until administration should be taken out upon her husband's estate; and a lien was claimed on the cow for a year's keeping.  As to the small house, or cabin, erected by her husband on the dower land of her mother, (said to be worth from $25, to $40 to remove,) the case leaves it in doubt, whether it could lawfully be removed from the land, without consent from the tenant in dower.

The fact that these persons had been relieved, to the amount of some five dollars, at the expense of Hartford is entitled to some weight, as evidence that they were properly chargeable.  No inducement appears, for affording that assistance collusively, or fraudulently.  It might be otherwise, had the paupers been about to become settled in Hartford.  But the only mode, in which this could happen, would be by a seven years' residence of the widow, after she became such; and her residence in that character commenced in 1843.

On the whole, we do not think there was such evidence, that she

had the means of supporting herself and children without public aid, that the removal ought to have been defeated on that ground.

Judgment affirmed.