## TOWN OF BERLIN v. TOWN OF WORCESTER.

*Transient Pauper.* *Gen. Sts. c.* 20, *ss.* 4, 13.

In assumpsit for the support of a transient pauper, by the town that had rendered aid, against the town of the pauper's settlement, it appeared that the pauper when suddenly taken sick was at work in plaintiff town under a contract to work during the season of making butter and cheese ; that, the pauper's father being dead, the pauper, for a number of years before suit brought and before 1872, had "made it her home," at intervals and when not at work out, with her mother, who had re-married, and lived in defendant town ; that after 1872, she resided in like manner with her sister, who had married, and lived in another town. It did not appear that she had acquired a right to a home at either of those places by virtue of any con-tract ; nor that she had either a room or furniture at either of them ; but that her so returning to them was by courtesy of her mother and sister and their husbands. It appeared that when she went to work in plaintiff town, she took her trunk with her, leaving only a few articles of apparel at her sister's. *Held,* that as it did no appear that there was any place to which the pauper had by contract a right to re-turn, nor that she had the *animus revertendi,* she had *come to reside,* within the meaning of s. 4, c. 20, Gen. Sts.

ASSUMPSIT to recover for the support of Elizabeth Culver, who was suddenly taken sick, about May 15, 1874, while at work for Aaron Andrews in Berlin. Trial by the court, September Term, 1876, REDFIELD, J., presiding.

It was conceded that the legal settlement of the said Elizabeth, at the time the support was furnished, was in the defendant town. It appeared that in April, 1874, she contracted with said An-drews to work for him through the season of making butter and cheese, to commence about May 1st ; that she commenced work and continued till about May 15th, when while in said service she was suddenly taken severely sick, and so continued for a long time ; that she was poor and needed relief, and that said An-drews called on the overseer of the poor in Berlin to take the care and support of her, which he did, expending therein for nurs-ing, board and medical attendance, the sum of $52.80.

The only question made was, whether recovery could be had without an order of removal. It appeared that said Elizabeth's father died some years before the trial, and that her mother had remarried and had since resided in the town of Worcester ; that

the said Elizabeth, who was about twenty years of age, had lived and made it her home at her mother's in Worcester, at intervals when not at work out, until her sister married one Stickney, in Northfield, in 1872, since when she had made her home in like manner, and at like intervals, at said sister's. It did not appear that by any contract she had acquired any right to a home at either of those places, nor that she had either a room or furniture at either place; but that her habit of returning to her mother's and sister's was by courtesy of her mother and sister and their husbands. It appeared that when she went to said Andrews's she left at her sister's a water-proof, cloak and parasol. It further appeared that her sister did not visit her during her sickness, and that she had never been at her sister's since her sickness; that she had worked through the season in Berlin the year before her sickness, and continued to live at said Andrews's until the March after her sickness; that when she went to the places where she worked, she took her trunk with her and continued at work until her contract expired; that when she went to said Andrews's to work she took her trunk with her in her usual manner; and that her water-proof and parasol were taken to Andrews's during her sickness and never returned to her sister's.

Upon the foregoing facts the court rendered judgment, *pro forma*, for the plaintiff for $52 and interest from July 1, 1874, with costs; to which the defendant excepted.

*J. A. & G. W. Wing*, for the defendant.

The only question is, Was the pauper a transient person, or had she come to reside in Berlin? She took her trunk and nearly all her clothing with her. She went to Berlin to reside, with no intent to return to any place, and no place to return to. *Middlebury* v. *Waltham*, 6 Vt. 200; *Pittsford* v. *Chittenden*, 44 Vt. 382; *Stamford* v. *Readsboro*, 46 Vt. 606. See *Jamaica* v. *Townshend*, 19 Vt. 267.

*Heath & Carleton*, for the plaintiff.

The alleged pauper had not come to reside, within the meaning of the statute. It appears that it was her habit to return

after her terms of service to her mother's and sister's, and that when she commenced work for Andrews, she left certain articles of apparel at her sister's. There is no evidence tending to show that she had any intention not to return to her sister's, as she had done before, and her leaving of those articles there indicates her intention to return. Her status as to residence was thus the same as when she made her home at her mother's or sister's. The fact that her home at her mother's or sister's was one not of right but of courtesy, is not material. *Brownington* v. *Charleston*, 32 Vt. 411. This case is clearly distinguishable from *Middlebury* v. *Waltham*, 6 Vt. 200, and *Pittsford* v. *Chittenden*, 44 Vt. 382, approving the same. In the former of those cases the pauper had no home, nor place to which she resorted and which could be called her home, and her only place of residence was where she was at work.

The opinion of the court was delivered by

Ross, J. The question arising on the exceptions is, whether Elizabeth Culver, the pauper, at the time the plaintiff furnished her aid, was, on the facts found by the County Court, a resident, or a transient pauper ; if the former, the judgment must be for the defendant, inasmuch as the plaintiff did not procure an order for the removal of the said Elizabeth to the defendant before furnishing her the aid ; if the latter, the plaintiff is entitled to recover under the statute, as the legal settlement of the pauper is conceded to have been in the defendant town.

The pauper was a single person, working out from place to place, and at the time of receiving the support, at work for the season of making butter and cheese, in the plaintiff town. Unless these facts are legally modified by the other facts found by the County Court, the pauper must, under the decisions of this State, be held to have come to reside in the plaintiff town, and so be subject to an order of removal. *Middlebury* v. *Waltham*, 6 Vt. 20 ; *Hartford* v. *Hartland*, 19 Vt. 392 ; *Jamaica* v. *Townshend*, 19 Vt. 267 ; *Barton* v. *Irasburgh*, 33 Vt. 157 ; *Pittsford* v. *Chittenden*, 44 Vt. 382 ; *Stamford* v. *Readsboro*, 46 Vt. 606.

The only facts found claimed to modify her status as fixed by

4

the foregoing facts are the following :  " The said Elizabeth, who was about twenty years of age, had lived and made it her home at her mother's at Worcester, at intervals when not at work out, until her sister married one Stickney, in Northfield, in 1872, since when she had made her home in like manner and at like intervals, at her sister's.  It did not appear that by any contract she had acquired any *right* to a home at either of those places, nor that she had either a room or furniture at either place ; but that her habit of returning to her mother's and sister's was by courtesy of her mother and sister and their husbands."  This, we think, comes short of finding that the pauper, at the time she received the aid, had a home at her sister's.  Home, or domicile, is a place where the person has the *right* to be.  The idea of a right to be and remain at a particular place is inseparable from the conception of home or domicile.  The finding of a home by courtesy, and without right, is all in the past.  There is nothing found in regard to the pauper's having a home, by intrusion even, at her sister's, at the time the aid was furnished.  The case is also silent as to any intention to return to such a home.  The presumption, as shown by the cases cited, is, that a single person, when working out for a living, is domiciled or has his home where he performs his service, takes his meals, and has his apparel cared for. That is the place where he has a right to be and remain during the term of service, and it is incumbent upon the town asserting that the home or domicile of such a person is at a place different from the one where he or she is abiding, to show affirmatively that there is some other place to which such person has by contract or understanding the right to return when the term of service is completed, and has also the present and continuing intention so to do. Without the existence of these two facts, the commorancy of such a person does not take on the character of " transient," or being on his passage from the place where his operations and plans centre, through the town in which the misfortune befell him, with an abiding purpose of presently returning to such place.  The case not only fails to find any *animus revertendi*, but affirmatively states that the pauper had not subsequently returned to her sister's, though over two years had elapsed after the aid was fur-

nished before the trial by the County Court. Where no return in fact has taken place, it is all the more important to show the existence of the *animus revertendi* at the time the aid was furnished.

Judgment reversed, and judgment for defendant to recover its costs.