No. 10,578.

MERRILL *v*. SHEARSTON.

Decided April 2, 1923.

Election contest involving the office of county treasurer of Adams county. Judgment for contestor.

*Affirmed.*

*On Application for Supersedeas.*

1. WORDS AND PHRASES—*Asylum.* An asylum is an institution for the protection or relief of some class of destitute, unfortunate or afflicted persons.

2. ELECTIONS—*Residence—Hospital.* A hospital maintained by the United States government for the treatment of disabled soldiers, who may be transferred or discharged as determined by the government authorities, is an asylum, as that term is used in article VII, section 4 of the Constitution, and the inmates of such an institution are not, on account of their mere residence there, entitled to vote at general elections.

Neither does presence in such a hospital, under the circumstances shown, constitute a residence such as is required by section 2146, R. S. 1908, concerning qualifications for voters.

3.        *Residence.* A person is not entitled to vote in Colorado, unless he has adopted the state as a fixed and permanent habitation, and there must not only be a personal presence, but an intent to make the place his true home.

4.    WORDS AND PHRASES—*Domicile.* The idea of residence is compounded of fact and intention. It includes a location with an intent to remain there as a place of fixed, present domicile.

5.    ELECTIONS—*Hospitals—Presumption.* The presumption is against the right of inmates of a government hospital, of the character disclosed in this proceeding, to vote.

*Error to the County Court of Adams County, Hon. G. A. Garard, Judge.*

Mr. PAUL W. LEE, Mr. J. PAUL HILL, for plaintiff in error.

Mr. HARRY S. CLASS, Mr. HARRY BEHEN, for defendant in error.

*En banc.*

MR. CHIEF JUSTICE TELLER delivered the opinion of the court.

THIS is an election contest involving the office of the county treasurer of Adams county. The plaintiff in error was declared elected on the face of the returns. The defendant in error contested the election, and the matter was heard in the county court of Adams county, finding and judgment for the contestor. The contestee brings error and asks for a supersedeas.

The question for determination is as to the right of the inmates of the Fitzsimons Hospital to vote in precinct 23 of Adams county. This hospital was constructed and is maintained by the United States government for the treatment of soldiers and ex-soldiers afflicted with tuberculosis. It appears from the evidence, quoted in the briefs, that

there were, at the time of the election in question, between 1,100 and 1,200 patients in the hospital; that they are under the control of the United States Veterans Bureau; that they may be sent, at any time, by the government medical authorities, to any other hospital in the district, and will be discharged and removed from the hospital whenever they are deemed cured. How many of these patients voted does not appear, but it is conceded that if the patients of the hospital who voted, and who were held not qualified to vote, were in fact not qualified, the judgment, is correct. The right of the nurses and civil employees of the hospital to vote is questioned, but we do not find it necessary to pass upon that question. There is no dispute as to the facts.

Defendant in error relies upon article VII, section 4 of the Constitution, which reads as follows:

"For the purpose of voting and eligibility to office, no person shall be deemed to have gained a residence by reason of his presence, or lost it by reason of his absence, while in the civil or military service of the state, or of the United States, nor while a student at any institution of learning, nor while kept at public expense in any poorhouse or other asylum, nor while confined in public prison."

Defendant in error contends that a hospital, such as this, falls within the term "asylum" as used in the constitutional provision in question. Webster defines asylum as an "institution for the protection or relief of some class of destitute unfortunate or afflicted persons."

In *Lawrence v. Leidigh,* 58 Kans. 594, 50 Pac. 600, 62 Am. St. Rep. 631, the word as used in the Kansas Constitution is defined as "an institution for the protection and relief of the unfortunate."

Inmates of soldiers' homes are generally entitled to stay there indefinitely, and there would be much more reason for holding that they might acquire a voting residence, at such home, than there would be in the instant case, as to the patients. Yet in *Silvey v. Lindsay,* 107 N. Y. 55,

13 N. E. 444, and *Wolcott v. Holcomb*, 97 Mich. 361, 56 N. W. 837, 23 L. R. A. 215, it was held that the word "asylum", in a constitutional provision like that under consideration, included a soldiers' home; and that inmates thereof did not, by residing in such home, acquire a domicile, and a right to vote in that district. In both cases it was held that residence in such an institution partook of the character of the institution, and was likewise eleemosynary, that the inmates have no connection with local municipal government, and that they were there only in the character of beneficiaries, for a temporary purpose. The cases recognize that the purpose of the provision is to prevent the control of municipal affairs by persons who have no pecuniary interest in them. In one case it is said on this subject: "This provision of the Constitution is aimed at the participation of an unconcerned body of men in the control through the ballot box of municipal affairs in whose further conduct they have no interest, and from the mismanagement of which by the officers their ballots might elect, they sustain no injury." *In Re Cunningham, et al.*, 91 N. Y. Supp. 974.

The reasoning in these cases applies with full force to the facts of the instant case. The patients in the hospital have no interest in the affairs of Adams county, and yet they might, by their united votes, determine a matter of great local interest.

We cite these cases only upon the meaning of "asylum" and as establishing principles, which whether or not applicable to soldiers' homes, are certainly applicable to hospitals, which have none of the characteristics of a home.

Under the authorities, an inmate of an asylum, or a student attending school, is not, by this constitutional provision, prevented from becoming a voter in the place where the school or asylum is situated. The holding is solely that the right to vote is not gained by a mere residence at the place; but, if it exists, it must be shown by acts entirely distinct from such residence. *In re Barry*, 164 N. Y. 18, 58 N. E. 12, 52 L. R. A. 831.

In 20 C. J. p. 72, it is said of this question: "The facts to establish a change of residence must be wholly independent and outside of his presence in the district as a student, and should be very clear and convincing to overcome the natural presumption."

This is the law announced in *Matter of Goodman,* 146 N. Y. 284, 40 N. E. 769. See also, *Matter of Garvey,* 147 N. Y. 117, 41 N. E. 439.

Regardless of this constitutional provision, the patients in this hospital are not, under the statute (section 2146, R. S. 1908), entitled to vote. According to that section, a voter's qualifications includes a residence of one year in the state, ninety days in the county, thirty days in the city or town, and ten days in the ward or precinct. Presence in the hospital, under the circumstances shown, does not, under the decisions of this court, constitute residence such as is required by the statute.

In *Sharp v. McIntire,* 23 Colo. 99, 46 Pac. 115, in discussing this statute, we said: "It is contended by counsel for contestee that the word 'reside,' as herein used, signifies to 'dwell', 'abide' or 'live' in the state; and that when a person has actually lived in the state the specified time he meets this requirement. With this construction of the word we cannot agree. We think the residence therein contemplated is synonymous with 'home' or 'domicile,' and means an actual settlement within the state, and its adoption as a fixed and permanent habitation; and requires not only a personal presence for the requisite time, but a concurrence therewith of an intention to make the place of inhabitancy the true home."

In *Jain v. Bossen,* 27 Colo. 423, 62 Pac. 194, it is said: "The distinction between mere residence and domicile must be borne in mind. The former is used in law to denote that a person dwells in a given place; the latter is the legal home of a person, or that place where the law presumes that he has the intention of permanently residing, although he may be absent from it. Rapaljae & Lawrence's Dictionary.

When one has acquired a domicile, he must abandon it before he can gain another. To effect such a change, there must be both act and intention; in other words, there must be a severance from the old place with the intention of uniting with the new one, and these must concur. *Kellogg v. Hickman,* 12 Colo. 256."

In *Parsons v. People,* 30 Colo. 388, 70 Pac. 689, there was under consideration the same statutory provision. The court, after referring to the case last cited, and others, says:

"These cases hold that one is not entitled to vote in this state unless he has made an actual settlement within the state, and adopted it as a fixed and permanent habitation. * * * That there must not only be a personal presence here for the requisite time, but a concurrence therewith of an intention to make the place of inhabitancy the true home."

It was held that a student at the School of Mines, who had no intention to stay in Jefferson County except as a student, was not entitled to vote. These cases are cited with approval in *People v. Turpin,* 49 Colo. 234, 112 Pac. 539, 33 L. R. A. (N. S.) 766, Ann. Cas. 1912A, 724.

Plaintiff in error complains that the court rejected his offer to show that each patient who voted had resided in this state, county and precinct the time required by the statute; that he had abandoned his former domicile at the date of the election, and prior thereto, and had the fixed intention of making Colorado his home.

This evidence was properly rejected. It fell far short of showing an intent to make a home in election precinct 23, of Adams county. It included no offer to show any act such as is necessary to go with the intention, in order to acquire a domicile. The idea of residence is compounded of fact and intention. It includes a location with an intent to remain there as a place of fixed, present domicile. It is the place where a man habitually dwells, which he may leave for a temporary purpose, and to which he

returns when the occasion for absence no longer exists. *Thomas v. Warner*, 83 Md. 14, 34 Atl. 830.

In *Town of Berlin v. Town of Worcester*, 50 Vt. 23, it is said: "Home, or domicile, is a place where the person has the right to be. The idea of a right to be and remain at a particular place, is inseparable from the conception of home or domicile."

In *United States v. Luria*, 184 Fed. 643, speaking of the intention to make a place a home, it is said: "If the person's intention is limited to a period itself determined by some definite event, even though the occurrence of that event may be uncertain, he has not the requisite intention. This is particularly true of a person who goes to a place for the purpose of staying until he is restored to health, although he is unable to know just when his restoration will occur, his residence is determined by that fact which he expects to occur, and therefore he has no intention of indefinite residence."

From the undisputed evidence it appears that whatever might be the patient's intention or desire, he could not make the hospital a place of permanent residence within the above definitions. His stay there was subject to the determination of the hospital authorities, and, in the nature of the case, was limited.

The rule has been laid down that: "A student in a college town is presumed not to have the right to vote. If he attempts to vote, the burden is upon him to prove his residence at that place, and it must be done by other evidence than his mere presence in the town." *Welsh v. Shumway*, 232 Ill. 54, 83 N. E. 549. To the same effect is *Sanders v. Getchell*, 76 Me. 158, 49 Am. Rep. 606.

"A student in a college town is presumed not to have the right to vote in that town." 20 C. J. 72.

When it had been shown that these votes were cast by patients in the hospital, there was a presumption against the right to vote that required evidence to overcome. There was, therefore, no error in the ruling of the court upon that question,

It is contended, however, that the cases involving the rights of inmates in soldiers' homes do not apply here because those cases had to do with institutions supported by the state. The reason for the exclusion given in some of the cases cited, namely, that the inmates had no sufficient interest in local affairs to entitle them to vote, would apply in one case as well as in another. At all events, the statutory provisions above cited, when applied to this case, support the finding and judgment of the court. No evidence was offered that any of these patients had a legal residence which would entitle him to vote in precinct 23.

We agree with the trial court who said:

"A simple statement of the circumstances of the case, as to this hospital or any other hospital, but especially to this hospital, makes it evident that they cannot contemplate making it a home. In the first place, it is not a home; it lacks all the characteristics of a home; it is not built as a home; it is very different, in my judgment, from a soldiers' home, that has the idea of home and permanence in it. This has the idea only of temporary and indefinite occupancy. More than that, in this case the contestant has shown that these persons who go there as patients are absolutely under the control of the government officials. They can be excluded from the hospital at any time, and they know that; that is a matter of law. It has been shown. Now, under those circumstances, they cannot contemplate, and no one else can contemplate for them, any permanent residence or abode in that institution."

The supersedeas is denied and the judgment affirmed.