## No. 11,164.

### KEMP v. HEEBNER.

Decided April 6, 1925.

Election contest.   Judgment for contestor.

*Affirmed.*

*On Application for Supersedeas.*

1.   ELECTIONS—*Residence—Hospital.*  Civilian employes of a United States government hospital are not, on account of their residence there, entitled to vote at general elections.

*Error to the County Court of Adams County, Hon. George A. Garard, Judge.*

Messrs. COEN & SAUTER, Mr. LEONARD E. ANDERSON, Mr. J. PAUL HILL, for plaintiff in error.

Mr. HARRY S. CLASS, Mr. HARRY BEHM, for defendant in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

AT the general state election in November, 1924, George S. Kemp, contestee below, plaintiff in error here, on the face of the returns was elected by a majority of one vote county commissioner of Adams county. A statutory contest was filed in the county court of Adams county by his opponent, William Heebner, contestor below, defendant in error here. Much evidence was produced by both parties. The ballot boxes of all the precincts were opened and examined. A thorough investigation was had of the qualifications of the various persons who cast the disputed votes. A recount thereof was had with the result that the contestor Heebner was found by the court to have received a majority of fifteen votes, and thereupon he was declared elected, and from that judgment the contestee is here with his writ of error.

At the outset it should be stated that after all the ballots in every precinct had been counted the contestee Kemp maintained a lead of one vote, if the votes of the so-called civilian employees of the Fitzsimons General Hospital situate within this precinct, which were cast and counted by the judges of election for the contestee, were valid votes. Though contestor sought to show that two votes that were cast for contestee in other precincts were not valid, we shall not disturb the finding of the trial court that they were legal votes since, if this finding were set aside, it would not change the result of the court's finding and judgment that fifteen invalid votes for contestee were counted for him by the judges of election.

The sole and controlling question, therefore, is: Were the persons who were employed by, and who at the time were working at, the hospital in the civilian service of the United States, qualified voters of the precinct in which this hospital is located? If they were, the contestee and not the contestor should have been declared elected; if they were not, contestor was properly held elected. This hospital is for the cure and treatment of those discharged soldiers of the United States Army who are suffering from tuberculosis. The hospital was established and maintained and is operated by and under the sole control of the United States Government through the Veterans' Bureau. Inmates are received and discharged solely according to the will and determination of the authorities of the hospital. They may not come and go at pleasure but only when permitted by those in authority. That the buildings which are erected on the premises belong exclusively to the United States Government and are in its possession is not questioned. There is, however, no evidence that the title of these lands was ever acquired by the United States either by treaty, condemnation, grant, purchase or otherwise. The record is silent as to title. The principal point made by the contestee, and the only one calling for notice, is that unless title has been so acquired by the United States, and even though there may be a lease, which is not title, sovereignty and jurisdiction of every nature over these lands is still in the state of Colorado and jurisdiction of no kind has ever been vested in or acquired by the United States, and therefore the question of the qualification as voters of persons, whether inmates or as coming within the designation of civilian employees residing on the lands surrounding the hospital and on which the buildings are erected, is to be determined wholly without reference to the fact that the hospital is maintained and operated by the United States. Patients and inmates, as well as civilian employees, are not permitted as of right to remain at the hospital. The civil employees are permitted by the management, as a part of their pay, to remain on

the grounds and sleep in the buildings, but the only relation they have with these grounds or with Adams county is in connection with the hospital. This Court has already decided in *Merrill v. Shearston,* 73 Colo. 230, 214 Pac. 540, that this hospital is an asylum and for the protection or relief of the unfortunate discharged soldiers of the United States who are suffering from tuberculosis. It held in that case that this hospital, so maintained and where the inmates may be transferred or discharged as determined by the Government authorities, is necessarily an asylum as that term is used in article VII, section 4 of our Constitution, and that the inmates of such an institution are not, on account of their mere residence, entitled to vote at a general election. The Court further held that, under section 2146, R. S. 1908, C. L. 1921, section 7525 (see, also, C. L. 1921, section 7528), presence in such a hospital or asylum in the circumstances does not constitute a residence such as is required to qualify them as voters. And the Court also held that the presumption is against the right of inmates of such a goverment hospital to vote. Unless, in the nature of things, a distinction is to be made between inmates and civilian employees of the hospital, there is no tenable ground upon which the contestee may rely in support of the proposition that mere residence of the civilian employees at the hospital for the statutory length of time entitles them to vote in this precinct, if they possess the other legal qualifications of voters. We do not see any difference in principle, so far as concerns the question before us, between civilian employees and inmates. But if there is any distinction, the status of the latter is stronger and their right to vote at a place which was established solely for their benefit is much more appealing than that of the former. The residence of neither class in such a hospital under the decision in the Merrill Case constitutes a residence or domicile such as is required concerning the qualifications of voters. This Court having heretofore decided that inmates cannot thus acquire a domicile at the hospital, a fortiori civilian employees can not. The follow-

ing quotation from the Merrill Case is directly in point: "Under the authorities, an inmate of an asylum, or a student attending school, is not, by this constitutional provision, prevented from becoming a voter in the place where the school or asylum is situated. The holding is solely that the right to vote is not gained by a mere residence at the place; but, if it exists, it must be shown by acts entirely distinct from such residence."

Quoting from 20 C. J. p. 72, with approval, we also said: "The facts to establish a change of residence must be wholly independent and outside of his presence in the district as a student, and should be very clear and convincing to overcome the natural presumption." We further said: "Presence in the hospital, under the circumstances shown, does not, under the decisions of this court, constitute residence such as is required by the statute." These observations are as applicable to a civilian employee as to an inmate. In the Merrill Case we held that the trial court properly rejected the offer of each patient to show that he had resided in the state, county and precinct the time required by the statute, and that he had abandoned his former domicile at the date of the election and had the fixed intention of making Colorado his home. We said that such proof if received, would have fallen far short of showing an intent to make a home in election precinct 23, within which this hospital is located. A home, we said: "is the place where a man habitually dwells, which he may leave for a temporary purpose, and to which he returns when the occasion for absence no longer exists." And what is particularly applicable here: "Home, or domicile, is a place where the person has the right to be. The idea of a right to be and remain at a particular place, is inseparable from the conception of home or domicile." The evidence here is in no material respect different from what it was in the Merrill Case, and the offer of proof in the two cases, which was rejected, is essentially the same. The conclusion in the Merrill Case was: "From the undisputed evidence it appears that whatever might be the patient's in-

tention or desire, he could not make the hospital a place of permanent residence within the above definitions. His stay there was subject to the determination of the hospital authorities, and, in the nature of the case, was limited." From the record now before us the same situation is presented as existed in the Merrill Case and the last quoted expression of this Court is just as applicable to the facts in this record as it was to the Merrill record and just as pertinent to the case of an employee as to an inmate or patient of the hospital. Therefore, wholly aside from the question of title of the Government, and if it be conceded that it has not acquired legal title of the lands upon which the hospital buildings have been erected, and that all the powers of sovereignty concerning these lands are vested in the state of Colorado, still neither patients nor inmates nor employees of the hospital, under our Constitution and controlling statutes, would or could acquire on the hospital grounds a home or domicile, a place of permanent residence.

The application for supersedeas is denied and the judgment is affirmed.

MR. JUSTICE DENISON and MR. JUSTICE ADAMS dissent.