Honorable Mary Estill Buchanan Secretary of State 1576 Sherman Street Denver, Colorado 80203
Dear Ms. Buchanan:
QUESTIONS PRESENTED AND CONCLUSIONS
You have asked what procedure county clerks must follow in registering electors under C.R.S. 1973, 27-10-119, which deals with the right of the mentally ill to register and vote.
1. Specifically, you have asked what effect article VII, section 4 (the "provision") of the Colorado constitution has on the voting rights of the mentally ill who are in treatment facilities.
 It is my conclusion that legally qualified voters in state institutions must be allowed to establish residence in the communities which they receive treatment. In determining whether residence has been established, county clerks must treat this group of citizens in the same way others are treated. There is no compelling state interest to be served by treating this group differently.
2. You have also asked whether C.R.S. 1973, 27-10-119
regarding registration and voting by the mentally ill is valid or void. The statute carries a strong presumption of constitutionality, C.R.S. 1973, 2-4-201(a).
 It is my opinion that the statute is valid, legal and constitutional in all its terms.
ANALYSIS
Regarding question #1, the provision reads as follows:
 For the purposes of voting and eligibility to office, no person shall be deemed to have gained a residence by reason of his presence, or lost it by reason of his absence, while in the civil or military service of the state, or of the United States, nor while a student at any institution of learning, nor while kept at public expense in any poorhouse or other asylum, nor while confined in public prison.
(Emphasis added.)
The election statute differs somewhat from the constitutional provision. C.R.S. 1973, 1-2-104(1) (the "statute") provides:
 For the purposes of registration, voting, and eligibility to office, no person shall be deemed to have gained a residence by reason of his presence, or lost it by reason of his absence, while in the civil or military service of the state or of the United States; nor while a student at any institution of higher education; nor while kept at public expense in any public prison or state institution, unless the person is an employee or a member of the household of an employee of such prison or institution.
In analyzing the provision and the statute it is important to touch on some basic propositions. First, both the statute and provision are presumptively constitutional, C.R.S. 1973,2-4-201(a). Second, the state has an unquestioned right to protect the franchise by allowing only bona fide residents to vote. Third, C.R.S. 1973, 1-2-206(3)(b) and 1-2-202 state that the county clerk shall register those seeking to register and who have complied with C.R.S. 1973, 1-2-202(2), 1-2-206 and1-2-207. If the county clerk suspects fraud, the remedy is to report it to the district attorney, not to refuse to register a person, C.R.S. 1973, 1-2-206(3)(a). Fourth, laws which state there is no gain or loss of residence for certain groups such as students have been upheld when a rebuttable presumption was created. For example, in Ramey v. Rockefeller,348 F. Supp. 780 (D.C. N.Y. 1971), such a statute was upheld because the student was allowed to overcome the presumption, with evidence concerning the students real residence. As we shall see, the Colorado cases go much further. An irrebuttable presumption is created.
There are three Colorado Supreme Court cases interpreting the provision. In Merrill v. Sheartson, 73 Colo. 230,214 P. 540 (1923), the court denied the right to register to patients of a United States hospital located in Adams County for the treatment of soldiers and ex-soldiers for tuberculosis. The court held that the effect of the provision and the statute was to establish a presumption that a resident in an asylum was not a resident of the precinct in which the asylum was located.
The provisions were read as prohibiting residents of a federal institution from establishing domicile in the precinct in which the federal institution was located. The court found that theonly evidence sufficient to overcome the presumption of nonresidence was proof that the elector's residence had been within the precinct prior to the elector's admittance to the federal institution.
The decision in Kemp v. Heebner, 77 Colo. 177,234 P. 1068 (1925) extended the Merrill holding to employees of the government hospital.
The Supreme Court in Israel v. Wood, 93 Colo. 500,27 P.2d 1024 (1933), held that inmates of a county poorhouse were not entitled to register in the precinct in which the poorhouse was located, unless they could overcome the constitutional presumption of nonresidence.
Developments in the law of equal protection since the above cases were decided have cast serious doubt on the continuing validity of these cases. Creation of a presumption of nonresidency against several of the categories listed in the provision have been held to be unconstitutional by the United States Supreme Court and other courts.[1] As I shall discuss later, statutes saying that students or military personnel can never gain residency for registration and voting purposes have been struck down as violations of the equal protection clause. These cases are directly applicable to the issue at hand, and are dispositive of it. Therefore, for the reasons that follow, I find that the interpretations of the statute and provision are constitutionally invalid, as violations of the equal protection clause. There is no compelling interest to be served by burdening that class of citizens kept at public expense in a poorhouse or asylum. Because there is no compelling state interest, and because the fundamental right of voting is involved the cases interpreting the provision and the statute as creating an irrebuttable presumption are invalid.
It must be remembered that residence is established by physical presence and intent to remain. Restatement (Second)Conflict of Laws, sections 15, 16 (1971). The provision and statute are constitutional if they are read to mean that physical presence of a former nondomiciliary within the state or county is not alone sufficient to supply, nor is absence of a former domiciliary alone sufficient to lose the required mental element. This reading means that the "gain or loss" provision does not operate as an irrebuttable, exclusionary presumption but as a restatement of the general principle that a citizen retains his prior residence until it is affirmatively established that he has acquired a new one. The general assembly has provided for this way of looking at the "gain or loss" provision by adding subsection (2) to C.R.S. 1973, 1-2-104. Students now have the opportunity to show that they are residents. County clerks and registrars must treat all people who are qualified to vote in exactly the same manner. Thus, determination of residency will be a matter of presence and stated intent. Patients, who are qualified to vote under C.R.S. 1973, 1-2-101 and 1-2-102 would answer the questions asked of him under C.R.S. 1973, 1-2-206 and take the prescribed oath under 1-2-207. If the county clerk feels that the putative voter has falsified his answers, the clerk may ask the district attorney to investigate and take appropriate action, under 1-2-206(3)(a).
Section 1 of the fourteenth amendment of the United States Constitution provides that no state shall deny to any person within its jurisdiction the equal protection of the laws. Under the classic "rational basis" equal protection test, courts would look at the "facts and circumstances behind the law, the interests which the state claims to be protecting, and the interests of those who are disadvantaged by the classification."Williams v. Rhodes, 393 U.S. 23, 30 (1968). Traditionally, the court has allowed states wide discretion in passing laws that effect groups differently. The court found a violation of the equal protection clause only when the classification had no rational relation to any legitimate state objective.
If a law sets up a "suspect classification" or affects the exercise of a "fundamental right," the "rational basis" standard is abandoned in favor of the compelling state interest standard,Kramer v. Union Free School District,395 U.S. 621 (1969). Under this standard the state must show there is a vital interest which can be protected only by using the challenged classification. The imposed restrictions must beprecisely formulated so that they actually operate to achieve the articulated state interest. Kramer v. UnionFree School District, supra. This standard applies to the fact situation before us. First, voting is a fundamental right. Harper v. Virginia Board ofElections, 383 U.S. 663 (1966), and one which the Supreme Court is "zealous to protect," Carrington v. Rash,380 U.S. 89 13 L.Ed.2d 675 (1965). The case law interpretations of the statute and the provision obviously impinges on this fundamental right. All other Colorado citizens are allowed to establish residency anywhere within the state. Citizens receiving treatment are not allowed the same right. They must vote absentee in counties which some may not consider to be their residences. Some would never be allowed to vote. For example, if a citizen came into the state and resided in Denver County for thirty-one days and then voluntarily entered a treatment facility in Jefferson County and lived there for twenty years, even if he worked and paid taxes and declared that he would never leave, this citizen could never vote, anywhere in this state. The same would be true for someone who entered a state institution before his eighteenth birthday. And, of course, all citizens in state institutions would be precluded from voting in the county in which the institution is located, even though they consider themselves to be residents of such counties.
Second, the interpretations burden a suspect classification. The cases state that those kept at public expense shall be treated differently for establishment of residence purposes, from those who can afford to pay. This imposes a burden on a class based on indigency. Such classes are suspect, Griffin v.Illinois, 351 U.S. 12 (1956), and the compelling state interest test will be applied to them.
Is there a compelling state interest which can justify impinging the exercise of a fundamental right and burdening of a suspect classification. The stated reason for denying students or patients the ability to establish residency for voting purposes was given in Merrill v. Sheartson, supra, where the court quoted with approval from a New York case:
 This provision of the constitution is aimed at the participation of an unconcerned body of men in the control through the ballot box of municipal affairs in whose further conduct they have no interest and from the mismanagement of which by the officers their ballots might elect they sustain no injury.
Applying this rationale to the facts before them the Merrillv. Sheartson court decided:
 The patients in the hospital have no interest in the affairs of Adams County, and yet they might by their united votes, determine a matter of great local interest.
The other and related reason given for restricting the right to establish residency is that the putative electors lacked the necessary capacity to intend to make that place a permanent home. In Merrill v. Sheartson, the court stated:
 From the undisputed evidence it appears that, whatever might be the patient's intention or desire, he could not make the hospital a place or permanent residence within the above definitions. His stay there was subject to the determination of the hospital authorities, and, in the nature of the case, was limited.
A study of the case law shows that these reasons are not compelling enough to meet the compelling state interest test. InCarrington v. Rash, supra, the court struck down a Texas statute which created a conclusive presumption that military personnel in Texas were nonresidents. The effect of the statute was that all servicemen not residents of Texas before induction could never vote in Texas, no matter how long Texas may have been his home. Defending the validity of the Texas statute, the state put forth the same two arguments advanced inMerrill v. Sheartson, supra. First, the state said it had an interest in protecting the franchise from transients. Second, the state argued that military personnel, because they were subject to reassignment, could never form the intention to become permanent residents. The court held that the Texas statute violated the equal protection clause of thefourteenth amendment.
 We deal here with matters close to the core of our constitutional system. "The right . . . to choose," . . . that this court has been so zealous to protect, means, at the least, that states may not casually deprive a class of individuals of the vote because of some remote administrative benefit to the state . . . . By forbidding a soldier ever to controvert the presumption of nonresidence, the Texas constitution imposes an invidious discrimination in violation of the fourteenth amendment.
This holding is directly applicable to the case at hand. In some cases, citizens could be precluded from ever voting in Colorado, for either state or local offices. In all cases, citizens would be conclusively presumed to be nonresidents of the county where the facility is located.[2]
Decisions in the voting rights area rendered sinceCarrington v. Rash, supra, support my conclusion that case law interpretations of the statute and provision violate the equal protection clause of thefourteenth amendment. In Evans v. Cornmann, 398 U.S. 419,26 L.Ed.2d 370, the United States Supreme Court struck down a Maryland statute that created a presumption that residents of a federal enclave were not bona fide residents of Maryland. The Evansv. Cornmann court found that the state's claim that the restriction maintained an informed electorate to be groundless. Local issues and actions, the court reasoned, substantially affected all residents, regardless of whether they lived in the federal enclave or not. The court concluded that these citizens were entitled under the fourteenth amendment to protect that interest by exercising the equal right to vote.
Cases in the student voting rights area include Whately v.Clark, 482 F.2d 1230 (5th Cir. 1973); Wilkins v.Bentley, 385 Mich. 670, 189 N.W.2d 423 (1971); Brightv. Baesler, 336 F. Supp. 527 (E.D. Ky. 1971); Jolocoeurv. Mihaly, 5 Cal.3d 565, 488 P.2d 1 (1971). Alsosee Dunn v. Blumstein, 405 U.S. 330, (1971);Vladis v. Cline, 412 U.S. 441 (1973); Kramer v.Union Free School District, 395 U.S. 621 (1969).
For the argument that unreasonable presumptions created by governmental action are a denial of due process, seeNote, 23 De Paul L. Rev. 1314, 1316. One of the more recent cases concerning the right of patients to vote in the community in which they receive treatment is Coulombre v.Board of Registrars of Voters, 326 N.E.2d 360
(App.Ct. of Mass., 1975). In Coulombre,supra, a patient at Worcester State Hospital in Massachusetts filed a petition for declaratory relief seeking to establish that he was a resident of Worcester and that the refusal of the Board of Registrars to register him violated his constitutional and statutory rights. The court held that the petitions satisfied actual presence and intent requirements to establish "domicil" in the community was to comply with terms of his probation and earn enough money to leave, where the petitioner, who was employed in the community and maintained a bank account there, intended to make his home in the community "for the time at least."
SUMMARY
Legally qualified voters in state institutions must be allowed to register to vote, once they have established residence in Colorado and the precinct.
Very truly yours,
 J.D. MacFARLANE Attorney General
ELECTIONS MENTAL HEALTH
C.R.S. 1973, 27-10-119
C.R.S. 1973, 1-2-104(1) C.R.S. 1973, 1-2-202
C.R.S. 1973, 1-2-206
Colo. Const. art. VII, § 4
SECRETARY OF STATE DEPT. Elections, Div. of
Legally qualified voters in state institutions must be allowed to register to vote, once they have established residence in Colorado and the precinct.
[1] The modern Colorado Supreme Court has been part of the national trend in the voting rights area. In Jarmel v.Putnam, 179 Colo. 215, 499 P.2d 603 (1972), the court held that a three month durational residency requirement was unconstitutional.
[2] The articulated state interests seem to be better served by the plethora of statutes which deal precisely with protection of the franchise. The purpose of these statutes is to make sure that only those interested in the community's affairs may vote. These statutes include the following from C.R.S. 1973:
 1-2-101 (durational residency requirement); 1-2-206 (questions answered by elector); 1-2-207 (oath taken by elector); 1-2-211 (purging registration book); 1-2-219 (multiple registration — most recent date governs); 1-2-211 (post election procedures); 1-13-114 (procuring false registration); 1-13-137 (voting twice); 1-13-148 (offenses relating to absentee voting); 1-30-101 (voting twice — penalty); 1-30-118 (penalty for false affidavit); 1-30-119 (penalty for procuring false registry); 1-30-123 (false swearing penalty); 1-30-125 (false certificates by officers).
These statutes are precisely drawn to articulate the state interest in limiting the franchise to bona fide resident. There is no need for the broad and conclusive presumption of nonresidence established by the cases.